# EXHIBIT D

## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| HOWARD JOHN GOMBERT, JR. | : PRISONER |
| | : CIVIL ACTION NO. 3:01CV1913(DJS)(TPS) |
| Plaintiff, | : |
| V. | : |
| | : |
| LARRY LYNCH & WILLIAM KAMINSKI | : |
| | : |
| Defendants. | : NOVEMBER 23, 2004 |

### DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56, Defendants Larry E. Lynch and William J. Kaminski (the "Defendants") respectfully move for summary judgment on the Complaint of Plaintiff Howard J. Gombert, Jr. ("Plaintiff") based upon the undisputed facts and the doctrine of qualified immunity. As is more fully set forth in the accompanying Memorandum of Law, Statement of Undisputed Facts, affidavits and supporting documents, the Defendants are entitled to judgment as a matter of law on the Plaintiff's Complaint, as no genuine issues of material fact exist.

To the contrary, the Plaintiff's claim that the Defendants committed an unlawful search and seizure and violated his right to Equal Protection, are not supported by the facts or the law. In particular, the Plaintiff's property was taken pursuant to lawfully issued warrants, which completely

380872

protect the Defendants from liability. Moreover, it is undisputed, and the Plaintiff now admits, that essentially all of his seized property has been properly returned.

The Plaintiff's purported Equal Protection claim is legally and factually deficient because the Defendants cannot be held liable for failing to arrest the Plaintiff's ex-girlfriend, absent a finding that the Plaintiff was a "victim" who had a special relationship with the police, which would give rise to a duty to protect. Furthermore, the Defendants are shielded by the doctrine of qualified immunity because their conduct in processing the Plaintiff's property, and in conducting the arrest and investigation concerning the Plaintiff's sexual assault of his ex-girlfriend, was objectively reasonable.

**WHEREFORE**, the defendants Larry E. Lynch and William J. Kaminski respectfully request summary judgment on the Plaintiff's entire Complaint.

DEFENDANTS,
LARRY LYNCH AND WILLIAM KAMINSKI

By:_____
    JAMES N. TALLBERG, ESQ.
    Federal Bar Number Ct17849
    UPDIKE, KELLY & SPELLACY, P.C.
    One State St., P.O. Box 231277
    Hartford, CT 06123-1277
    Tel. No. (860) 548-2600
    jtallberg@uks.com

380872

2

## CERTIFICATION

THIS IS TO CERTIFY that a copy of the foregoing, was mailed in the United States mail,

First Class, postage prepaid this __23rd__ day of November 2004, to the following pro se party.

Howard John Gombert, Jr. #108050
c/o MacDougall-Walker Correctional Facility
1153 East Street South
Suffield, CT 06080

By: _____

JAMES N. TALLBERG, ESQ.
Updike, Kelly & Spellacy, P.C.

## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| HOWARD JOHN GOMBERT, JR. | : PRISONER |
| | : CIVIL ACTION NO. 3:01CV1913(DJS)(TPS) |
| Plaintiff, | : |
| V. | : |
| | : |
| LARRY LYNCH & WILLIAM KAMINSKI | : |
| | : |
| Defendants. | : NOVEMBER 23, 2004 |

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
### MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56, Defendants

Larry E. Lynch and William J. Kaminski (the "Defendants") respectfully submit this memorandum of

law in support of their Motion for Summary Judgment.

### I.    INTRODUCTION

Plaintiff Howard J. Gombert, Jr. ("Plaintiff"), a convicted sex offender, brought this action

seeking a return of his personal property, including a large quantity of pornographic videos,

pornographic photos of him having sex with women, a collection of women's undergarments, and

other sundry items. He has now conceded that all items have been returned or destroyed pursuant to

Court Order. Yet, he persists in this action alleging that he was treated differently than the mother of

his child, and victim of his sexual assault, because she was not arrested. The Plaintiff's claims have

neither factual support nor a legal foundation. The Defendants, who have performed their duty to

380872

enforce the laws of this State, did not violate the Plaintiff's rights.  They are entitled to summary

judgment on the Plaintiff's entire complaint.

## II.    FACTUAL BACKGROUND

### A.    THE UNDISPUTED FACTS

#### 1.    The Plaintiff's Arrest on February 29, 2000 and Conviction

On February 29, 2000, the defendants were both members of the New Milford Police

Department.  Complaint, ¶¶ 2-3; Answer, ¶¶ 2-3.  On that date, the Plaintiff lived at 322A Aspetuck

Ridge Road, New Milford, Connecticut, with his girlfriend "J" and their minor daughter.[1]  Deposition

of Howard J. Gombert, Jr. of 8/4/04 (hereinafter "Pl.'s Dep. Tr.") at 14 (Exhibit A).

The Plaintiff and J had lived at that address for approximately two and a half years.  Id. at 61.

J moved into the apartment approximately two weeks before the Plaintiff did and she paid the rent.

Id. at 97.  On the morning of February 29, 2000, the Plaintiff went to Court for a motor vehicle

offense.  Id. at 26, 29.  After Court, the Plaintiff got high on cocaine.  Id. at 33.

On that date, at approximately 11:16 a.m., Officer Kaminski arrived at New Milford Hospital

regarding a domestic violence complaint made by J involving assault and sexual assault.  Affidavit of

William J. Kaminski of 11/23/04 ("Kaminski Aff."), ¶4 (Exhibit B).  J complained to Officer

Kaminski that the Plaintiff had sexually assaulted her on Sunday, February 27, 2000.  Id., ¶5.

---

[1] Pursuant to Connecticut General Statutes §54-86e, the plaintiff's ex-girlfriend will be referred to only as "J," since she was the victim of a sex crime that the plaintiff was convicted of committing.

380872

2

J complained to Officer Kaminski that the Plaintiff had bitten the nipple of her left breast hard enough to draw blood. Id., ¶6. J had a blackened right eye. Id., ¶7. Dr. Fred Lohse, the attending ER physician, and Kathleen Woods, R.N., examined the J and completed a sex crimes kit. Id., ¶8. The kit (Evidence # 00-98-PR) was sealed by Nurse Woods and was taken as evidence. Id., ¶9. J was photographed showing the injuries she suffered. Id., ¶10.

Officer Kaminski took a handwritten detailed statement from J while at the emergency room. Id., ¶11. A more detailed statement was later taken by Investigator Larry Lynch and Officer Wheeler at the New Milford Police Department. Id., ¶12. It was determined later that day at the New Milford Police Department that the Plaintiff would be arrested for sexual assault, based on the complaint made by J and the physical evidence that she had been assaulted. Id., ¶13.

At approximately 5:46 p.m., on February 29, 2000, Officer Kaminski, Sgt. Duda, Sgt. Buckley, Officer Marino and Officer Nunnink traveled to 322A Aspetuck Ridge Road, New Milford, and arrested Mr. Gombert. Id., ¶14. Officer Lynch arrived later to process the scene. Affidavit of Larry E. Lynch of 11/23/04 ("Lynch Aff."), ¶4 (Exhibit C). Mr. Gombert was confronted by the police outside 322A Aspetuck Ridge Road. Pl.'s Dep. Tr. at 30. He fled on foot but was captured. Kaminski Aff., ¶16.

The Plaintiff was charged with sexual assault in a cohabiting relationship in violation of Connecticut General Statutes § 53a-70b; risk of injury to a minor in violation of Connecticut General

380872

Statutes § 53-21; and assault in violation of Connecticut General Statutes § 53a-61. Kaminski Aff.,

¶18. The Plaintiff admitted to the police that he bit J on her breast. Pl.'s Dep. Tr. at 24. The Plaintiff

has admitted that he previously threatened to kill J, but claims that he didn't mean it and only spoke

in anger. Id. at 126. The Plaintiff pleaded guilty under the Alford doctrine to the charges against

him. Pl.'s Dep. Tr. at 12.

### 2.    The Search and Seizure of Plaintiff's Property

Officer Kaminski transported the Plaintiff from 322A Aspetuck Ridge Road to New Milford

Police Headquarters and then he returned to 322A Aspetuck Ridge Road to safeguard the house until

a search warrant could be obtained to search the residence and seize evidence. Kaminski Aff., ¶20.

On March 1, 2000, the day after the Plaintiff was arrested, the police obtained a search warrant and

consent from J and searched the Plaintiff's house. Pl.'s Dep. Tr. at 81-82; see also Lynch Aff., ¶14.

A listing of the property that was seized is contained in Incident Report No. 00-167-OF, attached to

Officer Kaminski's Affidavit as Exhibit B1. Kaminski Aff., ¶23. After March 1, 2000, the Plaintiff's

case was handled by the Detective Division and  Officer Kaminski had no further involvement. Id.,

¶24.

A copy of the Consent to Search Form signed by J, dated March 1, 2000, is attached to

Officer Lynch's Affidavit as Exhibit C1. Lynch Aff., ¶15. A copy of the Search Warrant, dated

March 1, 2000, is attached to Officer Lynch's Affidavit as Exhibit C1. Id., ¶16. The evidence seized

was photographed and catalogued. Lynch Aff., ¶17. A listing of the evidence seized from 322A

Aspetuck Ridge Road, New Milford, on March 1, 2000, is attached to Officer Lynch's Affidavit as

Exhibit C1. Id., ¶17.

Among the evidence seized were items that were in plain view in a motor vehicle bearing

Connecticut Registration No. 234NSS, a white Pontiac Firebird, registered to the Plaintiff. Id., ¶18.

The vehicle was in the driveway of 322A Aspetuck Ridge Road with the hood up and the rear hatch

opened. Id., ¶19. The Police seized from the vehicle the following: one black sports cam bag; one

maroon premier collection bag with brown trim, one brown leather bag with Winston rodeo awards

label; one Bradlees shopping bag; one brown strongbox; one gray briefcase; one black nylon case

("Case Logic"); and one gray/black Jordash travel type bag. Id., ¶20. These items were placed in the

New Milford Police Evidence Room for safe keeping because the Plaintiff was incarcerated and the

victim, J, had elected not to stay at the residence. Id., ¶21.

### 3.    The Plaintiff is Suspected of Other Sex Crimes

While the Plaintiff was incarcerated on the charges arising from his February 29, 2000 arrest,

he was charged with other crimes arising from an incident that occurred in July 1999. Pl.'s Dep. Tr.

at 75-76; see also State v. Gombert, 80 Conn. App. 477 (2003) cert. denied, State v. Gombert, 267

Conn. 915 (2004). In that other action, the Plaintiff was convicted of attempt to commit sexual

assault in the first degree in violation of General Statutes § 53a-49(a)(2); risk of injury to a child in

violation of General Statutes § 53-21(a)(2); and threatening in violation of General Statutes § 53a-62. State v. Gombert, 80 Conn. App. 477 (2003).

He also was a suspect in a case of a missing woman named in New York whose first name was Robin. Id., ¶22; see also Pl.'s Dep. Tr. at 76-78 ("they say one of our mutual friends is dead. They keep asking me where the body is."). An investigator from the Carmel, New York Police Department visited the New Milford Police Department, seeking their cooperation in the investigation of the missing woman. Id., ¶23. On or about March 3, 2000, and on other occasions, members of the Carmel Police Department contacted members of the New Milford Police Department, seeking evidence and information regarding their missing person case. Id., ¶24. A Possessed Property Receipt for a necklace seized from the Plaintiff's belongings that was released from the New Milford Police Department to the Carmel Police Department, as part of their investigation of their missing person case, is attached to Officer Lynch's Affidavit as Exhibit C4. Id., ¶25.

On or about April 17, 2000, J made a new complaint that she was missing gold jewelry and other items of personal property. Id., ¶26. On or about April 17, 2000, J signed an additional Consent to Search form, allowing the police to take evidence from her house that they believed may have been evidence of additional crimes committed by the Plaintiff. Id., ¶27. A copy of the Consent to Search form signed by S, dated April 17, 2000, is attached to Officer Lynch's Affidavit as Exhibit

380872

6

C5. Id., ¶28. J complained that she believed the Plaintiff had stolen her gold jewelry and that she believed it was among the items taken by the police from the Plaintiff's vehicle for safekeeping when the Plaintiff was arrested. Id., ¶29.

On May 9, 2000, Officer Lynch sought and obtained a second search warrant in order to conduct a search of the aforementioned strongbox, briefcase and other bags of evidence that were taken from the Plaintiff's vehicle for safekeeping. Id., ¶30. A copy of the May 9, 2000 Search Warrant is attached to Officer Lynch's Affidavit as Exhibit C6. Id., ¶31. A copy of the Evidence Seizure Form, dated May 9, 2000, which catalogues the evidence the police gathered, is attached to Officer Lynch's Affidavit as Exhibit C7. Id., ¶32.

### 4.    The Disposition of the Plaintiff's Property

The police did not provide the Plaintiff with a receipt for the evidence that was seized because the search warrants were sealed and he was incarcerated. Id., ¶33. Because the Plaintiff was incarcerated and was under suspicion of having committed additional sex crimes, it was difficult to arrange for the disposition of his property. Id., ¶36. On July 2, 2001, evidence seized from the Plaintiff consisting primarily of pornographic videotapes and photographs was released by the New Milford Police Department to the Litchfield State's Attorney's Office. Id., ¶37. A copy of the Possessed Property Receipt, dated July 2, 2001, is attached to Officer Lynch's Affidavit as Exhibit C8. Id., ¶37. On July 6, 2001, two videotapes were released by the New Milford Police Department

to the Litchfield State's Attorney's Office. Id., ¶38. A copy of the Possessed Property Receipt, dated

July 6, 2001, is attached to Officer Lynch's Affidavit as Exhibit C9. Id., ¶38.

On April 7, 2003, assorted pornographic magazines and photo albums seized from the

Plaintiff were released by the New Milford Police Department to the Litchfield State's Attorney's

Office. Id., ¶39. A copy of the Possessed Property Receipt, dated April 7, 2003, is attached to

Officer Lynch's Affidavit as Exhibit C10. Id., ¶39. Some of the evidence seized from the Plaintiff,

including pornographic photos and videos, was destroyed pursuant to orders of the criminal court.

Id., ¶40. Other property was returned to the Plaintiff, although it was difficult to arrange since he was

incarcerated. Id., ¶41. A copy of the Court's Order (DiPentima, J.) dated May 6, 2003, and signed

September 24, 2003, is attached to Officer Lynch's Affidavit as Exhibit C11. Id., ¶42. A copy of the

Possessed Property Receipt, signed by the Plaintiff's representative, Lou Panico, dated March 31,

2004, is attached to Officer Lynch's Affidavit as Exhibit C12. Id., ¶43.

The Litchfield State's Attorney, Jim Fletcher, filed motions in Court regarding the disposition

of the Plaintiff's property. J also claimed that some of the seized property was hers. This

complicated the release of the Plaintiff's property but, at all times, Officer Lynch tried his best to

comply with the Court's orders regarding the disposition of the Plaintiff's property. Id., ¶44. Since

the filing of this action, all of the Plaintiff's property has been released, except one camera. Pl.'s

Dep. Tr. at 98-99 ("Q. When is the last time that you talked to Lou Panico about trying to recover

your property from the police? A. They finally release my property just recently and it's at my father's now."). That camera was reported stolen by the Plaintiff's landlord, Angelo Selino, and was returned to Mr. Selino after he proved to the police that he was the rightful owner. Id., ¶46. A copy of Officer Lynch's memorandum, dated April 17, 2001, regarding Mr. Selino's claim to the camera, is attached to Officer Lynch's Affidavit as Exhibit C13. Id., ¶47.

The Plaintiff has testified that he would have allowed the police to search without a warrant because he had nothing to hide. Pl.'s Dep. Tr. at 84. The Plaintiff claims that the police took his pornography collection. Id. at 94. The Plaintiff does not know what property the police took. Id. at 96. The Plaintiff claims that, after he was incarcerated, J gave away and sold his belongings. Id. at 57. The Plaintiff has sued J for allegedly disposing of his personal belongings. Id. at 61-62. The Plaintiff does not claim that the police took his leather coat, chair, or certain books. Id. at 61-63. The Plaintiff was upset that pornographic tapes that were his fathers, and which his son had viewed, were taken from his car. Id. at 45. The Plaintiff does not challenge his arrest in this action. Id. at 117.

### B.    THE PLAINTIFF'S CLAIMS

The operative complaint in this action is dated March 10, 2003.  Based on the above facts, the

Plaintiff has attempted to fashion two principal causes of action under 42 U.S.C. § 1983: a federal

claim for denial of equal protection rights, alleging that he was treated differently than J, and a claim

of unlawful search and seizure.  See Ruling on Defendants' Motion to Dismiss of 6/10/04.

The Plaintiff cannot prevail on either of these theories, has not produced any evidence to

support them, and they should be disposed of by the entry of summary judgment in favor of the

Defendants.

## III.    LEGAL ARGUMENT

### A.    SUMMARY JUDGMENT IS WARRANTED

A motion for summary judgment should be granted if the court determines that there is no

genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant

judgment for the moving party as a matter of law.  Fed. R. Civ. P. 56(c); see generally Celotex Corp.

v. Catrett, 477 U.S. 317, 322-23 (1986); Cronin v. Aetna Life Ins. Co., 46 F.3d 196, 202 (2d Cir.

1995).  The burden of showing that no genuine factual dispute exists rests on the party seeking

summary judgment.  Adickes v. S. H. Kress & Co., 398 U.S. 144 (1970); Cronin, 46 F.3d at 202.

The Second Circuit has ruled, "mere conjecture or speculation by the party resisting summary

judgment does not provide a basis upon which to deny the motion."  Quarles v. General Motors

380872

10

Corp., 758 F.2d 839, 840 (2d Cir. 1985).  Instead, *"the plaintiff must offer concrete evidence raising genuine disputes of material fact tending to show that his version of events is more than fanciful."* Johnson v. Carpenter Technology Corp., 723 F. Supp. 180, 182 (D. Conn. 1989) (emphasis added). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).

There are no genuine issues of fact regarding the Plaintiff's claims against the Defendants. They are entitled to judgment as a matter of law on the Complaint.

**B.**     **THE PLAINTIFF CANNOT ESTABLISH A VIOLATION OF 42 U.S.C. §1983**

Section 1983 of Title 42 of the United States Code "provides a remedy for deprivations of rights secured by the Constitutions and laws of the United States . . . " Lugar v. Edmondson Oil Co., 457 U.S. 922, 924 (1982).  In order to state a claim upon which relief can be granted pursuant to 42 U.S.C. §1983, a plaintiff "must allege (1) that the challenged conduct was attributable at least in part to a person acting under color of state law, and (2) that such conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." Dwares v. City of New York, 985 F.2d 94, 98 (2d Cir. 1993).  In addition, a plaintiff must demonstrate that his injuries were proximately caused by the defendants' violation of law. See Atkins v. New York City, 143 F.3d

100, 103 (2d Cir. 1998). Based on the undisputed facts, the Plaintiff cannot establish that he was denied a right, privilege or immunity secured by the Constitution or laws of the United States.

### 1.   **The Plaintiff Cannot Sustain His Search and Seizure Claim**

It is well established that a search and seizure conducted pursuant to a warrant generally may not be challenged unless it is so apparent that there was no probable cause that an officer should have known it was absent. See Malley v. Briggs, 475 U.S. 335 (1986); United States v. Leon, 464 U.S. 889 (1984). The duty of a court reviewing a search warrant for probable cause, "is simply to ensure that the magistrate had a 'substantial basis for . . . [concluding]' that probable cause existed." Gates v. Illinois, 462 U.S. 213, 238-39 (1983) *quoting* Jones v. United States, 362 U.S. 257, 271 (1960). The court should not conduct a *de novo* review. Gates, 462 U.S. at 237. The court's analysis should be based upon the "totality of circumstances." Id. Affidavits in support of warrants may be based upon information from unnamed, confidential informants, and from anonymous letters. Gates, 462 U.S. at 244; Franks v. Delaware, 438 U.S. at 167.

In reviewing a challenge to an affidavit in support of a search warrant, a court should put aside the allegedly false material, supply any omitted information and then determine if the application for the warrant would have supported a finding of probable cause. Cartier v. Lussier, 955 F.2d 841, 845 (2d Cir.1992); Magnotti v. Kuntz, 918 F.2d 364, 368 (2 Cir. 1991). If probable cause remains despite the exclusion of the incorrect information or correction of false information, no

violation of the plaintiffs' Fourth Amendment rights has occurred.  Golino, 950 F.2d at 870, *citing*

Franks, 438 U.S. at 155-56.

Here, Plaintiff has not a shred of evidence to suggest that there was a lack of probable cause

for the search warrants that issued on March 1, 2000 and May 8, 2000.  See Exhibits C2 and C6,

appended to Lynch Aff. (Warrants of 3/1/00 and 5/8/00).  To the contrary, the Plaintiff pleaded guilty

under the Alford Doctrine to the charges against him, essentially conceding that there was enough

evidence to convict.  Pl.'s Dep. Tr. at 12; see also North Carolina v. Alford, 400 U.S. 25 (1970).  The

police have accounted for all of the Plaintiff's property and even the Plaintiff now admits that, "they

finally released my property just recently and it's at my father's now."  Pl.'s Dep. Tr. at 98-99.

Moreover, the Plaintiff has also sued J, alleging that she sold off, or gave away his

belongings.  Id. at 61-62.  No reasonable jury could possibly rule in the Plaintiff's favor on his claim

that the police delayed returning his pornography collection, his assortment of ladies underwear, or

his other personal property, given that he was under suspicion as a sexual predator, and was in fact

convicted of sexually assaulting an eight year old girl.  See Gombert, 80 Conn. App. 477 (2003).

Therefore, the Defendants are entitled to summary judgment.

380872

### 2.    The Plaintiff Cannot Sustain His Equal Protection Claim

The Plaintiff's Equal Protection theory appears to be that, since he was arrested for biting J's breast, "then her grabbing me by the [testicles] is definitely sexual assault." Pl.'s Dep. Tr. at 31.[2] To the extent that this claim is premised on a failure to provide police protection theory, there is no legal basis for this claim. See DeShaney v. Department of Social Servs., 489 U.S. 189 (1989); Raucci v. Rotterdam, 902 F.2d 1050, 1055 (1990) (holding that before liability to attach for a failure to arrest there must be a special relationship between the victim and police).

The Plaintiff, while admittedly high on cocaine, told the police that he assaulted J by biting her breast. Pl's Dep. Tr. at 24, 33. J, at the hospital with a black eye, claiming to have been raped by the Plaintiff, swore out a complaint that he had committed assault and sexual assault upon her. Kaminski Aff., ¶¶7-12. There is no evidence that the New Milford Police had ever needed to protect the Plaintiff from J, or that the Plaintiff could in any way be considered a victim of anything except his own poor choices and bad judgment. Indeed, the Plaintiff initially fled when the Police arrived at his house, showing consciousness of guilt. Kaminksi Aff., ¶16. There is absolutely no basis to hold the Defendants liable on this claim and they are, instead, entitled to summary judgment.[3]

---

[2] Ironically, the Plaintiff does not challenge his own arrest by the Defendants, which he seems to accept. Pl.'s Dep. Tr. at 117-118.

[3] The Plaintiff has not specifically alleged any state law claims. If he had, the Defendants would have prevailed on those also because, pursuant to Connecticut General Statutes §46b-38b(c), the Defendants are protected from liability for domestic violence arrests made based on probable cause. The Plaintiff's guilty plea establishes probable cause and provides a basis for this state law immunity defense.

### C.    THE DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY

Even if the Court were to conclude that the Plaintiff stated a claim upon which liability may

lie, or that factual disputes preclude a finding for the Defendants, propositions that the Defendants

dispute, they are still entitled to qualified immunity because their conduct was objectively reasonable.

Colon v. Ludemann, 283 F. Supp. 2d 747, 761 (D. Conn. 2003). The qualified immunity defense

protects government officials "from liability for civil damages insofar as their conduct does not

violate clearly established statutory or constitutional rights of which a reasonable person would have

known." Connell v. Signoracci, 153 F.3d 74, 80 (2d Cir. 1998) (quoting Harlow v. Fitzgerald, 457

U.S. 800, 818 (1982)). As such, "qualified immunity is an entitlement not to stand trial or face the

burdens of litigation." Id. (internal quotations omitted); Mitchell v. Forsyth, 472 U.S. 511, 526

(1985). "The doctrine protects public officials from personally facing the risk of incurring ruinous

liability in the form of money damages, which would deter qualified people from public service. It

also safeguards the public interest in having its employees act with independence and without fear of

consequences." Eng v. Coughlin, 858 F.2d 889, 895 (2d Cir. 1988) (internal quotation and citation

omitted).

"Because the defense of qualified immunity is designed to relieve government officials of the

burdens of litigation as well as the threat of damages, *summary judgment is encouraged as a device*

*for disposing of claims barred by such immunity*." In Re State Police Litigation, 88 F.3d 111, 123

380872

15

(2d Cir. 1996) (emphasis added); <u>see also</u> <u>Harlow</u>, 457 U.S. at 818; <u>Behrens v. Pelletier</u>, 516 U.S. 299, 308 (1996); <u>Cartier v. Lussier</u>, 955 F.2d 841, 844 (2d Cir. 1992).  To establish this defense at the summary judgment stage, "the officers must show upon facts that are undisputed either that their conduct did not violate 'clearly established rights' of which a reasonable person would have known, or that it was objectively reasonable to believe that their acts did not violate those clearly established rights."  <u>Soares v. State of Connecticut</u>, 8 F.3d 917, 920 (2d Cir. 1993) (internal quotations omitted).

A defendant is entitled to summary judgment when "no reasonable jury looking at the evidence in the light most favorable to, and drawing all inferences most favorable to the plaintiff, could conclude that is was objectively unreasonable for the defendant to believe that he was acting in a manner that did not clearly violate an established right."  <u>Lennon v. Miller</u>, 66 F.3d 416, 420 (2d Cir. 1995) (<u>quoting</u> <u>Robinson v. Via</u>, 821 F.2d 913, 921 (2d Cir. 1987)).

For the reasons set forth above, even if the Defendants erred in some small way, which they specifically deny, by not disposing of the Plaintiff's property as fast as he wanted, or by not arresting J, reasonable officers at the very least could certainly have disagreed about which course of action to pursue.  <u>Colon</u>, 283 F. Supp. 2d at 761.  There is no suggestion that the Defendants took the Plaintiff's property for their own personal use, or for any improper purpose.  Rather, it was objectively reasonable for them to cooperate with other law enforcement agencies that were investigating the Plaintiff's sex crimes. Lynch Aff., ¶¶23-24.  No reasonable jury could rule for the

Plaintiff based on these undisputed facts.  Therefore, the Defendants are entitled to qualified

immunity and summary judgment on the Plaintiff's entire Complaint.

## IV.    <u>CONCLUSION</u>

For all of the foregoing reasons, Defendants Larry E. Lynch and William J. Kaminski

respectfully request that the Court grant their Motion for Summary Judgment.

DEFENDANTS,
LARRY LYNCH AND WILLIAM KAMINSKI


By: _____
JAMES N. TALLBERG, ESQ.
Federal Bar Number Ct17849
UPDIKE, KELLY & SPELLACY, P.C.
One State St., P.O. Box 231277
Hartford, CT 06123-1277
Tel. No. (860) 548-2600
jtallberg@uks.com

380872

17

## CERTIFICATION

THIS IS TO CERTIFY that a copy of the foregoing, was mailed in the United States mail,

First Class, postage prepaid this _23rd_ day of November 2004, to the following pro se party.

Howard John Gombert, Jr. #108050
c/o MacDougall-Walker Correctional Facility
1153 East Street South
Suffield, CT 06080

By: _____
    JAMES N. TALLBERG, ESQ.
    Updike, Kelly & Spellacy, P.C.

380872

18