UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

HOWARD JOHN GOMBERT, JR.,:    CIVIL ACTION NO. 3:01CV1913(DJS)
    Plaintiff      :
                      :
v.                   :
                      :
LARRY LYNCH and WILLIAM  :
KAMINSKI,            :
    Defendants     :    OCTOBER 24, 2006

## LOCAL RULE 56 STATEMENT IN SUPPORT OF DEFENDANTS' RENEWED MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56 of the Local Rules of Civil Procedure, the defendants Larry Lynch and William Kaminski respectfully offer the following Statement of Undisputed Material Facts in support of their Renewed Motion for Summary Judgment.

## I.    FACTS ALREADY ADMITTED BY THE PLAINTIFF

The defendants' November 23, 2004 Local Rule 56 Statement set forth numerous facts. In his "Local Rule 56(a)2 Statement," dated December 6, 2004, plaintiff Howard J. Gombert admitted the following facts:

1.   On February 29, 2000, the defendants were both members of the New Milford Police Department ("NMPD"). Complaint, ¶¶2-3, Answer, ¶¶2-3.

2.   On that date, the plaintiff lived at 322A Aspetuck Ridge Road, New Milford, Connecticut, (hereinafter "the Residence") with his girlfriend, "J."[1] and their minor daughter. Deposition of Howard J. Gombert, Jr. of 8/4/04 (hereinafter "Pl.'s Dep. Tr.") at 14. (Exhibit A).

3.   On the morning on February 29, 2000, the plaintiff went to Court for a motor vehicle offense.  Id. at 26, 29.

4.   On that date, at approximately 11:16 a.m., Officer Kaminski arrived at New Milford Hospital responding to a domestic violence complaint made by J. involving assault and sexual assault.  Affidavit of William Kaminski of 11/23/04 (hereinafter "Kaminski Aff. 11/23/04"), ¶4 (Exhibit B to 11/23/04 Mot.).

5.   At approximately 5:46 p.m. on February 29, 2000, Officer Kaminski, Sgt. Duda, Sgt. Buckley, Officer Marino and

---

[1]  Pursuant to Connecticut General Statutes §54-86e, the plaintiff's ex-girlfriend will be referred to only as "J," since she was the victim of a sex crime that the plaintiff was convicted of committing.

Officer Nunnink traveled to 322A Aspetuck Ridge Road, New Milford, and arrested the plaintiff.  Id., ¶14.

6.    The plaintiff was confronted by the police outside of 322A Aspetuck Ridge Road.  Pl.'s Dep. Tr. at 30.

7.    Officer Kaminski transported the plaintiff from 322A Aspetuck Road to the New Milford Police Headquarters.  The plaintiff was charged with sexual assault in a cohabitating relationship in violation of Connecticut General Statutes §53-70b; risk of injury to a minor in violation of Connecticut General Statutes §53-21; and assault in violation of Connecticut General Statutes § 53a-61.  Kaminski Aff. 11/23/04, ¶18.

8.    The plaintiff plead guilty under the Alford doctrine to the charges against him.  Pl.'s Dep. Tr. at 12.

9.    On March 1, 2000, the day after the plaintiff was arrested, the police obtained a search warrant and consent from J and searched the plaintiff's house.  Pl.'s Dep. Tr. at 81-82; see also Affidavit of Larry E. Lynch of 11/23/04 (hereinafter "Lynch Aff. 11/23/04"), ¶14 (Exhibit C to 11/23/04 Mot.).

10.   After March 1, 2000, the plaintiff's case was handled by the Detective Division and Officer Kaminski had no further involvement.   Kaminski Aff. 11/23/04, ¶24.

11.   On March 1, 2000, Investigator Lynch took for safekeeping certain property that was in the plaintiff's vehicle at his Residence.   Lynch Aff. 11/23/04, ¶20.

12.   These items were placed in the New Milford Police Evidence Room for safekeeping because the plaintiff was incarcerated and the victim, J., had elected not to stay at the residence.   Id., ¶21.

13.   On May 9, 2000, Officer Lynch sought and obtained a second search warrant in order to conduct a search of the containers that were taken from the plaintiff's vehicle for safekeeping.   Id., ¶30.

14.   On July 2, 2001, evidence seized from the plaintiff, consisting primarily of pornographic videotapes and photographs, were released by the New Milford Police Department to the Litchfield State's Attorney's Office.   Id., ¶37.

15.  On July 6, 2001, two videotapes were released by the New Milford Police Department to the Litchfield State's Attorney's Office.  Id., ¶38.

16.  On April 7, 2003, assorted pornographic magazines and photo albums seized from the plaintiff were released by the New Milford Police Department to the Litchfield State's Attorney's Office.  Id., ¶39.

17.  Some of the evidence seized from the plaintiff, including pornographic photos and videos, was destroyed pursuant to orders of the criminal court.  Id., ¶40.

18.  The plaintiff claims that the police took his pornography collection.  Pl.'s Dep. Tr. at 94.

19.  The plaintiff does not know what property the police took.  Id. at 96.

20.  The plaintiff claims that, after he was incarcerated, J. gave away and sold his belongings.  Id. at 57.

21.  The plaintiff has sued J for allegedly disposing of his personal belongings.  Id. at 61-62.

## II.    FACTS ALREADY DEEMED UNDISPUTED BY THE COURT

In its Ruling on Cross Motions for Summary Judgment, dated February 15, 2005, the Court found the following facts to be undisputed:

22.  On March 3, 2000, a member of the NMPD released a necklace belonging to the plaintiff to the Carmel, New York, Police Department in response to their inquiry regarding a missing person case.  Lynch Aff. 11/23/04, ¶25.

23.  In April 2000, J. made a new complaint that various items of jewelry were missing.  Id., ¶26.

24.  On April 17, 2000, J. signed a consent form permitting the police to search and take evidence from her residence.  Id., ¶27.

25.  J. also told police that she thought the items of jewelry might be in the various bags the police had removed from the plaintiff's car during the warrantless search on March 1, 2000.  Id., ¶29.

26.  In response to this complaint, on May 8, 2000, Officer Lynch obtained a search warrant to search the various bags and boxes removed from the plaintiff's car for safekeeping

following the warrantless search on March 1, 2000.  Lynch Aff. 11/23/04, ¶46.

### III.  ADDITIONAL UNDISPUTED FACTS

In addition to the undisputed facts set forth above, which have all been either admitted by the plaintiff or deemed undisputed by the Court, the defendants set forth the following undisputed facts:

27.  On February 29, 2000, after the plaintiff went to court for a motor vehicle infraction, he used cocaine.  Pl.'s Dep. Tr. at 33.

28.  On February 29, 2000 at approximately 5:46 p.m., when the police arrived to arrest the plaintiff, he attempted to flee on foot, but was apprehended in the woods.  Kaminksi Aff. of 11/23/04, ¶16; Affidavit of Henry Marino of 10/24/06 (hereinafter "Marino Aff."), ¶6 (Exhibit C).

29.  On February 29, 2000, after the plaintiff was taken into custody his bond was set at $500,000.  Pl.'s Dep. Tr., at 42; Affidavit of William Kaminski of 10/24/06 (hereinafter "Kaminski Aff. 10/24/06"), ¶4 (Exhibit B).

30.  The plaintiff was not able to post the $500,000 bond set on February 29, 2000.  Pl.'s Dep. Tr., at 42; Kaminski Aff. 10/24/06, ¶5.

31.  The plaintiff has been incarcerated since his arrest on February 29, 2000.  Pl.'s Dep. Tr., at 42.

32.  Because of his incarceration, the plaintiff never returned to the Residence after he was arrested at approximately 5:46 p.m. on February 29, 2000.  Pl.'s Dep. Tr., at 42; Kaminski Aff. 10/24/06, ¶6.

33.  On February 29, 2000, after the plaintiff was taken into custody, the Residence was considered to be a crime scene by the NMPD.  Kaminski Aff. 10/24/06, ¶7; Affidavit of Larry E. Lynch of 10/24/06 (hereinafter "Lynch Aff. 10/24/06") (Exhibit D), ¶5; Affidavit of James Mullin (hereinafter "Mullin Aff.") of 10/24/06, ¶5 (Exhibit E).

34.  The crime being investigated was the sexual assault complaint made by J.  Kaminski Aff. 10/24/06, ¶8; Lynch Aff. 10/24/06, ¶6; Mullin Aff., ¶6.

35.  On February 29, 2000, after the plaintiff was taken to police headquarters for processing, a member of the NMPD

stood watch at the Residence to preserve what they considered to be a crime scene.  Kaminski Aff. 10/24/06, ¶9.

36.  On the evening of February 29, 2000, after Officer Kaminski assisted with the processing of the plaintiff at police headquarters, he returned to the Residence and stood watch to preserve the crime scene.  Id.

37.  On the evening of February 29, 2000, Officer Kaminski stood watch at the Residence from the time he left the NMPD after processing the plaintiff until approximately 2:30 a.m. on March 1, 2000.  Id., ¶10.

38.  On March 1, 2000 at approximately 2:30 a.m., NMPD Officer Jerome Dombrowski relieved Officer Kaminski and took over watch duty at the Residence.  Id., ¶11.

39.  On March 1, 2000, from approximately 2:30 a.m. until approximately 2:30 p.m. (12 hours), Officer Dombrowski stood watch at the Residence to preserve the crime scene.  Id., ¶12.

40.  On March 1, 2000 at approximately 2:30 p.m., Officer Kaminski returned to the Residence and relieved Officer Dombrowski.  Id., ¶13.

41.  On March 1, 2000, from approximately 2:30 p.m. until approximately 8:00 p.m., Officer Kaminski again stood watch at the Residence to preserve the crime scene.  Id., ¶14.

42.  On March 1, 2000, while members of the NMPD stood watch at the Residence, Investigators Larry Lynch and James Mullin continued their investigation concerning the plaintiff. Lynch Aff. 10/24/06, ¶7; Mullin Aff., ¶7.

43.  On March 1, 2000, Investigator Mullin met with J. at New Milford Police Headquarters.  Lynch Aff. 10/24/06, ¶8; Mullin Aff., ¶8.

44.  On March 1, 2000, Investigator Lynch and Officer Wheeler took a written statement from J. concerning her sexual assault complaint against the plaintiff.  Lynch Aff. 10/24/06, ¶9.

45.  On March 1, 2000, Investigator Mullin also had J. sign a consent to search form for the Residence.  Lynch Aff. 10/24/06, ¶10; Mullin Aff., ¶9.

46.  On March 1, 2000, Investigator Lynch conferred with Assistant State's Attorney Guy Wolf ("ASA Wolf") regarding

obtaining evidence from the Residence.  Lynch Aff. 10/24/06,
¶11; Mullin Aff., ¶11.

47.  ASA Wolf counseled Investigator Lynch that, because
J. and the plaintiff were cohabitating at the Residence, the
NMPD should obtain a search warrant for the Residence in
addition to the consent to search form signed by J.  Lynch Aff.
10/24/06, ¶12; Mullin Aff., ¶12.

48.  On March 1, 2000, Investigators Lynch and Mullin
prepared an Application for a Search Warrant of the Residence.
Lynch Aff. 10/24/06, ¶13; Mullin Aff., ¶13.

49.  The March 1, 2000 Affidavit in Support of the Search
Warrant was signed by Investigators Lynch and Mullin.  Mullin
Aff., ¶14.

50.  On March 1, 2000, in the early evening, Investigators
Lynch and Mullin traveled to Kent, Connecticut, to the
residence of Superior Court Judge Alexandra DiPentima, to have
the Search Warrant approved.  Lynch Aff. 10/24/06, ¶15; Mullin
Aff., ¶15.

51.  On the early evening of March 1, 2000, Judge DiPentima signed the Search Warrant.  Lynch Aff. 10/24/06, ¶16; Mullin Aff., ¶16.

52.  During the more than twenty-four hours post plaintiff's arrest that it took to obtain the Search Warrant, the NMPD observed the Residence to ensure that the crime scene was not disturbed.  Kaminski Aff. 10/24/06, ¶15; Lynch Aff. 10/24/06, ¶17; Mullin Aff., ¶17.

53.  Officers Kaminski and Dombrowski were the primary officers who watched the Residence during that time frame. Kaminski Aff. 10/24/06, ¶16; Lynch Aff. 10/24/06, ¶18.

54.  Officer Kaminksi did not enter the Residence until after the Search Warrant was obtained and executed on the evening of March 1, 2000.  Kaminski Aff. 10/24/06, ¶17.

55.  On March 1, 2000, at approximately 8:00 p.m., Investigator Lynch, Investigator Mullin, and Officer Earl Wheeler arrived at the Residence to execute the Search Warrant that had been approved by Judge DiPentima.  Lynch Aff. 10/24/06, ¶19; Mullin Aff., ¶18.

56.  Investigator Lynch and Officer Wheeler arrived at the Residence in the NMPD's Crime Scene Van.  Lynch Aff. 10/24/06, ¶20; Mullin Aff., ¶19.

57.  The Crime Scene Van is utilized for processing evidence from crime scenes.  Lynch Aff. 10/24/06, ¶21; Mullin Aff., ¶19.

58.  No evidence was examined or seized from the Residence until after Investigator Lynch arrived with the Crime Scene Van and the Search Warrant on the evening of March 1, 2000. Kaminski Aff. 10/24/06, ¶18; Lynch Aff. 10/24/06, ¶22; Mullin Aff., ¶20.

59.  Because he was incarcerated, the plaintiff cannot confirm or deny what transpired at the Residence during the time period between his arrest (approximately 5:46 p.m. on February 29, 2000) and when the Search Warrant was executed (approximately 8:00 p.m. on March 1, 2000).

60.  On the evening of March 1, 2000, at or about the same time that Investigator Lynch and Officer Wheeler arrived at the Residence, Investigator Mullin arrived at the Residence.  Lynch Aff. 10/24/06, ¶23; Mullin Aff., ¶21.

61.  Investigator Mullin was accompanied by J.  Lynch Aff. 10/24/06, ¶24; Mullin Aff., ¶22.

62.  As a result of J.'s concern for her safety, she indicated that she planned to leave the state and go to Maryland.  Lynch Aff. 10/24/06, ¶25; Mullin Aff., ¶23.

63.  J. showed the officers items that the plaintiff possessed that she thought might be of interest to law enforcement.  Lynch Aff. 10/24/06, ¶26; Mullin Aff., ¶24.

64.  Among the items that J. showed the officers was the plaintiff's collection of women's undergarments.  Lynch Aff. 10/24/06, ¶27; Mullin Aff., ¶25.

65.  J. also showed the officers a 1984 white Pontiac Firebird (the "Firebird") parked at the Residence bearing Connecticut Registration #234NSS.  Lynch Aff. 10/24/06, ¶28; Mullin Aff., ¶26.

66.  The Firebird was registered to the plaintiff at the Department of Motor Vehicles.  Lynch Aff. 10/24/06, ¶29; Mullin Aff., ¶27.

67.  The plaintiff has testified that, when the NMPD arrived to arrest him on February 29, 2000, he was trying to

14

repair a radiator problem on the Firebird and had its engine hood in the open position.  Pl.'s Dep. Tr. at 47.

68.  The plaintiff has also testified that, before the NMPD arrived to arrest him on February 29, 2000, he was packing his belongings into the Firebird.  Pl.' Dep. Tr. at 30, 42.

69.  The plaintiff further testified that, when the NMPD arrived to arrest him on February 29, 2000, the Firebird was "pretty much closed up, but it wasn't locked."  Pl.'s Dep. Tr. at 53.

70.  On the evening of March 1, 2000, when J. showed the members of the NMPD the Firebird, the engine hood and rear hatch were in the open position.  Lynch Aff. 10/24/06, ¶30; Mullin Aff., ¶28.

71.  On the evening of March 1, 2000, during the execution of the Search Warrant at the Residence, Investigator Lynch took a number of photographs to document the crime scene.  Lynch Aff. 10/24/06, ¶31; Mullin Aff., ¶29.

72.  Investigator Lynch took photographs of the Firebird. Lynch Aff. 10/24/06, ¶32; Mullin Aff., ¶29.

73.  Attached hereto as Exhibits D.1 and D.2, are color copies of the photographs of the Firebird taken by Investigator Lynch on the evening of March 1, 2000.  Lynch Aff. 10/24/06, ¶33.

74.  Photograph 1 shows the Firebird from the right front side and shows the hood and the rear hatch in the open position.  Lynch Aff. 10/24/06, ¶34; Mullin Aff., ¶30.

75.  Photograph 2 shows the Firebird from the rear.  Lynch Aff. 10/24/06, ¶35.

76.  In Photograph 2, two suitcase type bags can be seen in the open rear hatch.  Lynch Aff. 10/24/06, ¶36; Mullin Aff., ¶31.

77.  On February 29, 2000 at approximately 5:46, when the police arrived to arrest the plaintiff, the engine hood and rear hatch were in the open position, as depicted in the attached photographs.  Affidavit of Henry Marino, ¶7.

78.  On the evening of March 1, 2000, Investigator Lynch also took photographs of J.'s motor vehicle, a red Fiero bearing Connecticut registration # 905-MWN (the "Fiero").  Lynch Aff. 10/24/06, ¶37; Mullin Aff., ¶39.

79.  Hanging from the rear view mirror of the Fiero was a bronze type necklace with black beads and a circle medallion devil sign (pentagram) (the "Necklace").  Lynch Aff. 10/24/06, ¶38; Mullin Aff., ¶40.

80.  Attached hereto as Exhibit D.3 is a color copy of a photograph of the rear of the Fiero taken by Investigator Lynch on the evening of March 1, 2000.  Lynch Aff. 10/24/06, ¶39.

81.  Attached hereto as Exhibit D.4 is a color copy of a photograph of the Necklace hanging from the rearview mirror of the Fiero on March 1, 2000.  Id., ¶40.

82.  Attached hereto as Exhibit D.5 is a color copy of a photograph of the Necklace after it was removed from the Fiero on March 1, 2000.  Id., ¶41.

83.  The Necklace was not included on the inventory of the evidence seized pursuant to the Warrant because it was in J.'s car and she allowed the police to take it.  Id., ¶ 42.

84.  At some point between February 29, 2000 and March 3, 2000, Investigator Mullin spoke with Officers Randy Tompkins and Brian Karst of the Carmel, New York Police Department.  Mullin Aff., ¶41.

85.  Officers Tompkins and Karst informed Investigator Mullin that the plaintiff was a suspect in a missing person's case in Carmel, New York.  Id., ¶42

86.  The victim in that crime was Robin Frances Murphy, whose date of birth was January 11, 1978.  Id., ¶43.

87.  Officers Tompkins and Karst informed Investigator Mullin that Ms. Murphy was last seen on or about April 9, 1995 at a shopping plaza in Carmel, New York.  Id., ¶44.

88.  Officers Tompkins and Karst informed Investigator Mullin that Ms. Murphy was approximately seventeen at the time of her disappearance.  Id., ¶45.

89.  Officers Tompkins and Karst informed Investigator Mullin that the plaintiff worked at a laundry in the shopping plaza where Ms. Murphy was last seen before her disappearance. Id., ¶46.

90.  Officers Tompkins and Karst informed Investigator Mullin that the plaintiff was acquainted with Ms. Murphy and was the last person seen with Ms. Murphy before her disappearance.  Id., ¶47.

91.  Officers Tompkins and Karst informed Investigator Mullin that Ms. Murphy's personal belongings, including her keys, wallet and identification, were found near the shopping plaza where the plaintiff worked at the time of Ms. Murphy's disappearance.  Id., ¶48.

92.  Officers Tompkins and Karst informed Investigator Mullin that foul play was suspected in the disappearance of Ms. Murphy.  Id., ¶49.

93.  Officers Tompkins and Karst informed Investigator Mullin that the plaintiff was the prime suspect in Ms. Murphy's disappearance and her suspected death.  Id., ¶50.

94.  On or about March 3, 2000, Officers Tompkins and Karst went to New Milford to interview J. regarding the plaintiff's suspected connection to the disappearance of Ms. Murphy.  Id., ¶51.

95.  J. provided Officers Tompkins and Karst with evidence potentially linking the plaintiff to J.'s disappearance.  Id., ¶52.

96.  On or about March 3, 2000, Investigator Mullin released to Officer Tompkins the Necklace that had been in J.'s Fiero.  Id., ¶53.

97.  Plaintiff has acknowledged that he was a "major suspect" in the disappearance of Robin Murphy.  Pl.'s Dep. Tr. at 78.

98.  On March 1, 2000, starting at approximately 8:00 p.m., Investigator Lynch, Investigator Kaminski and Officer Wheeler conducted a search of the Residence pursuant to the Warrant and pursuant to the consent form signed by J.  Lynch Aff. 10/24/06, ¶43; Mullin Aff., ¶32.

99.  On March 2, 2000, at approximately 1:00 a.m. Investigators Lynch, Kaminski, Mullin and Officer Wheeler completed their search of the Residence and their inventory of the items seized.  Kaminski Aff. 10/24/06, ¶20; Lynch Aff. 10/24/06, ¶44; Mullin Aff., ¶33.

100. At the conclusion of the search, the officers ensured that the Residence was secure.  Kaminski Aff. 10/24/06, ¶21; Lynch Aff. 10/24/06, ¶45; Mullin Aff., ¶34.

101. The officers wanted to ensure that the Residence was secure because the plaintiff was being held on $500,000 bond and did not appear likely to be released any time soon and because J. had told them she was leaving the state.  Lynch Aff. 10/24/06, ¶46; Mullin Aff., ¶35.

102. Investigator Lynch concluded that it was his responsibility to safeguard the items that were in the Firebird because they appeared to have some value.  Kaminski Aff. 10/24/06, ¶22; Lynch Aff. 10/24/06, ¶47; Mullin Aff., ¶36.

103. Investigator Lynch could see items in plain view through the open rear hatch of the Firebird.  Lynch Aff. 10/24/06, ¶48; Mullin Aff., ¶37.

104. Rather than leave the items in the Firebird, where they could be stolen, Investigator Lynch took them to the NMPD Evidence/Property room for safekeeping.  Kaminski Aff. 10/24/06, ¶24; Lynch Aff. 10/24/06, ¶49; Mullin Aff., ¶38.

105. The items taken from the Firebird included:  one black sport cam (sic) bag; one maroon premier collection bag with brown trim; one brown leather bag with Winston rodeo awards label; one Bradlees shopping bag with assorted clothing;

one brown strong box; one gray briefcase; one black nylon case ("Case Logic"); and one gray black/Jordash travel type bag. Lynch Aff. 10/24/06, ¶50.

106. Investigator Lynch took these items for safekeeping and he did not open the containers or examine the contents until months later, after he had obtained a second Search Warrant, dated May 8, 2000.  Lynch Aff. 10/24/06, ¶51.  He obtained the second search warrant based on a new complaint made by J. concerning property she claimed the plaintiff had stolen from her.  Id.

107. The plaintiff later sued J. for the return of various stolen property he claims she stole from him.  Pl.'s Dep. Tr. at 61-62.

108. Copies of J.'s Answers to the plaintiff's small claims complaints are attached hereto as Exhibits F and G.

109. The police did not provide the plaintiff with a receipt for the items taken from the Firebird because the search warrants were sealed and the plaintiff was incarcerated. Lynch Aff. 11/23/04, ¶33.

110. The items in the Firebird that were taken for safekeeping were items that the plaintiff was worried about somebody stealing.  Pl.'s Dep. Tr. at 53.

111. Since the filing of this action, all of the plaintiff's property has been released, except one camera. Pl.'s Dep. Tr. at 99.

DEFENDANTS,
LARRY LYNCH and WILLIAM KAMINSKI


BY   /SS/ _____
James N. Tallberg
Federal Bar No.: ct17849
Karsten & Dorman, LLC
29 South Main Street
West Hartford, CT 06107
Their Attorney
Tel. 860-521-4800
Fax. 860-521-7500
jtallberg@karstendorman.com

## CERTIFICATION

I hereby certify that, on October 24, 2006, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing.  Parties may access this filing through the Court's system.

/SS/_____
James N. Tallberg