## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| HOWARD JOHN GOMBERT | : | |
| Plaintiff, | : | |
| | : | Civil Action No. |
| v. | : | 3:01 CV 1913 (DJS) |
| | : | |
| LARRY LYNCH and WILLIAM KAMINSKI | : | |
| Defendants. | : | January 19, 2007 |

## PLAINTIFF'S REPLY BRIEF IN SUPPORT OF HIS
## MOTION FOR PARTIAL SUMMARY JUDGMENT

Gombert requested permission to re-file his unadjudicated motion for summary judgment to address the narrow issue remaining after the Court's Ruling on Cross-Motions for Summary Judgment dated February 15, 2005 (the "Ruling"). In that Ruling, the Court found that Defendants did not have a warrant to search Gombert's white Pontiac Firebird (the "Firebird") on March 1, 2000, and that Defendants' search and seizure were not excepted from the Fourth Amendment's warrant requirement by the plain view exception. (Ruling at 9-11). The Court further held that Defendants were not entitled to qualified immunity with respect to the March 1 search and seizure. (*Id.* at 13). Based on these findings, it was apparent that the only reason the Court had not entered summary judgment in Gombert's favor was because the Ruling addressed only Defendants' motion for summary judgment, not Gombert's. Gombert therefore sought permission to file a motion seeking affirmative relief utilizing the findings in the Ruling as law of the case. The Court granted that request and, over Gombert's objection, the Court also permitted Defendants to seek summary judgment for the second time. Unfortunately, the decision to allow Defendants a second bite at the apple has thrown this case into a complete morass because Defendants have taken advantage of the Court's good will.

CTDOCS/1681508.1

Instead of abiding by the Ruling and the law of this case, Defendants filed their Renewed Motion for Summary Judgment dated October 24, 2006 (the "Renewed Motion"), based on an entirely new theory of their case that Defendants had not asserted in any prior pleading, including their first motion for summary judgment. Defendants now contend that their warrantless search and seizure of items from the Firebird was justified under the "community caretaking" or "safekeeping" doctrine. What's more, Defendants have the gall to assert that Gombert (and presumably the Court) simply "failed to appreciate" the safekeeping defense when briefing and adjudicating the first cross-motions for summary judgment even though Defendants never argued it. Gombert and this Court are aware of the history of this case and Defendants' sandbagging tactics should not be countenanced.

In any event, to the extent it is even willing to consider the belated arguments in the Renewed Motion, the Court is now faced with adjudicating essentially "mirror image" motions for summary judgment. Defendants seek summary judgment that their warrantless search on March 1 is excused under the safekeeping doctrine or, if not, that they are qualifiedly immune. Gombert contends that (a) the safekeeping theory is inapplicable as a matter of law, (b) even if it applies (it does not), Defendants cannot meet the safekeeping doctrine's strict criteria, and (c) that Defendants qualified immunity defense is legally insufficient.[1] However, Defendants are incorrect that the denial of one motion necessarily requires the Court to grant the other motion

---

[1] To avoid repetition, Gombert hereby incorporates by reference all of the factual and legal arguments he makes in his Opposition to Defendants' Renewed Motion For Summary Judgment dated January 19, 2007 (the "Gombert's Opposition"), and supporting documents, which have been filed contemporaneously herewith.

-2-

because the Court must view the facts in a light most favorable to the nonmovant when

adjudicating each motion.

Gombert's Motion for Partial Summary Judgment (the "Motion") should be granted

under any standard.  The Motion and Gombert's Opposition make clear that Defendants are

liable to Gombert for conducting a warrantless search and seizure of property from the Firebird

on March 1 and 2, 2000, that Defendants' safekeeping theory is meritless, and that they are not

qualifiedly immune from their misconduct.  Accordingly, partial summary judgment should enter

in favor of Gombert.

**ARGUMENT**

I.      **The Only Evidence In This Case Demonstrates That Defendants Are Liable To Gombert For Violating His Fourth Amendment Rights.**

Defendants first contend in their Opposition to Plaintiffs' Motion for Partial Summary

Judgment dated November 7, 2006 ("Defendants' Opposition"), that the Motion should be

denied because "Plaintiff submitted not a shred of admissible evidence in support of the motion."

(Defendants' Opposition at 3).  This contention wholly ignores the affidavits submitted in

support of Gombert's, and in opposition to Defendants' first motion for summary judgment, on

which the parties are entitled to rely.  It also ignores that summary judgment may be granted if

"the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact . . . ."  Fed. R. Civ. P.

56(c).  Here, Defendants' answers to discovery, their deposition testimony, their affidavits, the

testimony of Investigator James Mullin, the testimony of J, Gombert's then live-in girlfriend, and

-3-

the pleadings in this case collectively demonstrate that on March 1 and 2, 2000, Defendants

conducted a warrantless search and seizure of property in the Firebird, that their unlawful actions

are not excused by any recognized exception to the warrant requirement, and that Defendants'

actions were unreasonable under any standard.  (*See generally*, Gombert's Opposition).

Gombert is required to prove nothing more.

Equally ridiculous is Defendants' second contention that Gombert's purported failure to

submit evidence somehow undoes the Court's finding that an issue of fact exists as to whether

the Firebird's hatch was open or closed.  (Ruling at 10).  The Court was explicit in the parties'

October 3, 2006 teleconference that Gombert may rely on the Court's findings in the Ruling as

law of the case when seeking (and opposing) summary judgment.  Thus, the Court's prior

finding that a triable issue exists as to the Firebird's state on March 1 and 2, 2000 is not subject

to contradiction here.  Further, the affidavit Gombert submitted in support of his first motion for

summary judgment in which he affirms that the Firebird's hatch was closed when he was

arrested on February 29, 2000, has not disappeared; that pleading is entitled to consideration by

the Court when adjudicating this Motion. Fed. R. Civ. P. 56(c) (noting that pleadings on file

may be considered by the Court).  When Gombert's sworn statement is combined with J's

testimony that the Firebird's hatch was closed when she left the property at 322A Aspetuck

Ridge Road (the "Residence") on February 29, (J Dep. Tr. at 44-45), it is abundantly clear that

the only people who could have opened the Firebird are Defendants because they were the only

ones at the Residence after Gombert's arrest.

-4-

Moreover, as demonstrated in Gombert's Opposition, Defendants' new safekeeping theory cannot save their warrantless search and seizure of items from the Firebird on March 1 and 2, 2000. The safekeeping theory only permits officers to conduct a warrantless search for administrative purposes, and not because they are investigating any crime, and when the search or seizure is conducted pursuant to clearly established policies and procedures. *See Cady v. Dombrowski*, 413 U.S. 433, 441 (1973) (safekeeping may only be used when the search is "totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute."); *South Dakota v. Opperman*, 428 U.S. 364, 372-73 (1976) (noting that safekeeping searches are proper only if conducted "pursuant to standard police procedures"). For example, when the police impound a car, which they did not do with the Firebird, officers may inventory property in the car without a warrant to protect themselves and the property. *See*, *e.g.*, *id.* (upholding warrantless search under community caretaking function where police acquire temporary custody of vehicle).

But Defendants have not cited a single case, and the undersigned has not been able to find one, authorizing a "safekeeping" search and seizure of an automobile that (a) was not taken into police custody, (b) was lawfully parked on private property, and (c) where the police were looking for "evidence of a crime" when they entered the vehicle as Defendants were here.

CTDOCS/1681508.1

(Kaminski Dep. Tr. at 130-31).[2]  Moreover, Defendants admit that the New Milford Police

Department ("NMPD") does not have clearly established policy and procedure authorizing their

search of the Firebird.[3]  This case demonstrates why courts are hesitant to apply the safekeeping

theory -- Defendants' resort to the safekeeping doctrine is a pretext designed to cover-up the

investigative motives that caused Defendants to search and seize property from the Firebird in

the first place.  *Colorado v. Bertine*, 479 U.S. 367, 371 (1987) (cautioning that the safekeeping

theory may not be used as a pretext to conduct warrantless, investigative searches).  Accordingly,

Defendants' cannot avail themselves of the safekeeping theory and the Motion should be

granted.

**II.     Both Defendants Were Present And Participated In Removing Property From The
          Firebird and Thus Both Are Both Liable to Gombert.**

Defendants make a blanket claim that "[r]epeatedly throughout his motion, the plaintiff

has lumped Investigators Lynch and Kaminski together" but they spend the majority of their

argument discussing only the release of a necklace to the Carmel police department.

(Defendants' Opposition at 5-8).  Defendants focus is wholly misplaced.  The Motion, which

seeks summary judgment only as to liability, is based on Gombert's claim that Defendants

---

[2]  Further to Defendants' meritless evidence argument, Gombert can hardly submit more persuasive evidence demonstrating Defendants' liability than Defendants' own words and thus the Motion should be granted.

[3]  As noted in Gombert's Opposition, Kaminski tried to twist the NMPD's "abandoned property" procedure to fit the facts of this case but he failed miserably.  As Kaminski admitted, Gombert did not

CTDOCS/1681508.1

violated his rights by <u>searching and seizing</u> property from his Firebird, not by releasing the

necklace to Carmel.  While Defendants actions subsequent to the unlawful seizure, including

releasing the necklace, undoubtedly exacerbated Gombert's damages, their liability is premised

on the March 1 and 2 search and seizure.[4]

 Defendants' claim that Kaminski had no involvement with the Firebird is undercut by

Kaminski's own testimony.  Without a warrant and well after Gombert was arrested, Kaminski

first went into the Firebird on February 29, 2000, to determine whether any evidence was inside.

(Kaminski Depo. Tr. at 128-29).  This invasion of privacy is itself actionable.  Kaminski also

went with Lynch and Investigator Mullin to the Firebird on March 1 and 2 again with hopes of

obtaining evidence against Gombert.  (Kaminski Dep. Tr. at 130-31).  Moreover, by his own

admission, Kaminski was at the Firebird on March 1 and 2, 2000, when property was removed

from it.  (Kaminski Dep. Tr. at 132).  Although Lynch claims to have been the only one who

removed items from the Firebird, according to Investigator Mullin, it is highly unlikely that he

and Kaminski stood idly by as their superior unloaded the car.  (Mullin Dep. Tr. at 116-17).

Kaminski therefore "directly participated" in Defendants' unlawful search and seizure of items in

the Firebird and he must be held accountable for his actions.

---

"discard" the property in the Firebird outside the "curtilage" of his property during the course of a "lawful arrest" and thus the NMPD's abandoned property policy is inapposite. (Gombert Opposition at 27).

 [4] Defendants' claim that Lynch was not present for Gombert's arrest fails for the same reason. Lynch admittedly was responsible for removing property from the Firebird and thus he is "personally responsible for the alleged conduct" that caused Gombert's damages. *See Phoenix v. Reddish*, 175 F. Supp.2d 325, 218 (D. Conn. 2001).

-7-

III.    **Neither Gombert Nor The Court Misunderstood Defendants' Safekeeping Theory Because They Have Never Argued It Before And Thus It Does Not Provide A Basis For Denying The Motion Now.**

Defendants claim that "plaintiff has wholly failed to appreciate the defense to the narrow remaining claim presented by Investigators Lynch and Kaminski, which defense is not predicated on the 'plain view doctrine'" is insulting. (Defendants' Opposition at 9). The Court should be similarly insulted given that, like Gombert, the Court focused on the plain view exception in its Ruling and thus it too must have "failed to appreciate" Defendants' novel safekeeping theory. (Ruling at 10). Indeed, even Defendants failed to appreciate their safekeeping theory by not arguing it in their first motion for summary judgment. Defendants apparently expected both the Court and Gombert to divine that they were asserting a safekeeping theory, and not the plain view exception, from Defendants' casual use of both phrases in their prior pleadings and discovery responses. (Defendants' Opposition at 11). These are precisely the type of hide-the-ball tactics that the Federal Rules of Civil Procedure are designed to avoid.

Summary judgment is designed to streamline a case for trial. Quite the opposite has happened here -- Defendants have ignored the Ruling on Defendants' first motion for summary judgment and inserted a brand new theory into this case 43 months after Gombert filed his operative complaint, 23 months after Defendants filed their first motion for summary judgment, and 20 months after the Court spent the time and effort to issue the Ruling. Neither Gombert nor

this Court "misunderstood" Defendants' safekeeping argument as they contend.  (Defendants'

Opposition at 11).  Indeed, Gombert and the Court could not possibly have misunderstood

Defendants' safekeeping argument because they have never heard it before.  Defendants'

gamesmanship is prejudicial to the Court and to Gombert and it should be swiftly rejected.

Gombert did not misconstrue the Ruling as Defendants contend.  Although Defendants

would like to ignore it, this Court has already ruled that Defendants conducted a warrantless

search and seizure of the Firebird on March 1 and 2, 2000, which was not excepted from the

Fourth Amendment's warrant requirement under any theory then advanced by Defendants.

Ruling at 9-11.  The Court did not enter judgment in Gombert's favor based on that finding

because, at that point, Gombert's first motion for summary judgment was not before the Court;

the Court already had denied Gombert's motion without prejudice because he did not file a Local

Rule 56(a)(1) statement of facts.  (Ruling at 7).  Thus, the Court had no basis for granting

Gombert affirmative relief and so it simply denied Defendants' motion for summary judgment.

Gombert sought and received the Court's permission to seek summary judgment in his favor

based on the Ruling and that is precisely what Gombert did in the Motion.  Defendants' blissful

ignorance cannot prevail.

## **CONCLUSION**

Defendants have undermined this Court's procedure and they have wasted the Court's

and Gombert's time.  The Motion should be granted on this basis alone.  In any event, for all of

the reasons stated above and in Gombert's Opposition, Defendants' safekeeping theory is

-9-

meritless and they are liable to Gombert for violating his clearly established Fourth Amendment

right to be free from warrantless searches and seizures.  Partial summary judgment should

therefore enter in Gombert's favor, establishing Defendants' liability pursuant to § 1983 for their

warrantless search and seizure of property from Gombert's Firebird on March 1 and 2, 2000.


THE PLAINTIFF,
HOWARD JOHN GOMBERT


By:_____/s/_____
    Ben M. Krowicki [ct06153]
    Sara R. Simeonidis [ct25566]
    Brian R. Hole [ct26608]
    BINGHAM McCUTCHEN LLP
    One State Street
    Hartford, CT 06103
    Tel:  (860) 240-2700
    Fax:  (860) 240-2818
    His Attorneys

-10-

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and accurate copy of the foregoing was sent via the Court's electronic notification system or by first class U.S. mail, postage prepaid, on this 19th day of January, 2007, to the following counsel of record:

James N. Tallberg, Esq.
Karsten, Dorman & Tallberg, LLC
8 Lowell Road
West Hartford, CT 06119

_____/s/_____
Brian R. Hole

-11-