UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

HOWARD JOHN GOMBERT, JR.,:     CIVIL ACTION NO. 3:01CV1913(DJS)
    Plaintiff      :
v.                :
                :
LARRY LYNCH and WILLIAM  :
KAMINSKI,          :
    Defendants     :     FEBRUARY 8, 2007

**DEFENDANTS' SUR REPLY IN SUPPORT OF THEIR RENEWED
MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFF'S
RENEWED PARTIAL MOTION FOR SUMMARY JUDGMENT**

The fundamental question for the Court regarding the pending cross motions for summary judgment is whether, on March 1 and March 2, 2000, the conduct of Investigators Larry Lynch and William Kaminski was reasonable. The undisputed facts demonstrate that, based upon the totality of circumstances, both Investigators acted reasonably and well within the realm of conduct permitted by the Fourth Amendment. They are, therefore, entitled to summary judgment. For the reasons set forth below, plaintiff's recent attempt to create a factual dispute, while simultaneously claiming entitlement to summary judgment, should be rejected.

## I.     The Are No Genuine Issues of Material Fact in Dispute

On October 24, 2006, Investigators Lynch and Kaminski filed their Rule 56 Statement of Undisputed Material Facts.[1] Plaintiff insisted that he needed additional discovery in order to respond and did not submit his Counterstatement of Facts until January 19, 2007. In opposing the defendants' Motion for Summary Judgment, the plaintiff conceded the vast majority of the material facts that the defendants contend are undisputed.[2] The plaintiff denied a handful of facts, none of which are material to the fundamental question of whether the defendants' conduct was reasonable.

For example, the plaintiff contends that there are factual disputes regarding whether property was taken for safekeeping,

---

[1] Investigators Lynch and Kaminski hereby incorporate by reference their Motion for Summary Judgment, Memorandum of Law in Support of Summary Judgment, and all exhibits filed with those documents on or about October 24, 2006. Familiarity with the procedural history of this dispute is assumed and will not be restated here.

[2] Compare Def.s' Local Rule 56 Statement of 10/24/06 with Pl.'s Local Rule 56(a)(2) Counterstatement of Facts of 1/19/07, ¶¶1-9, 14-18, 20-25, 27, 29-60, 62-64, 66-69, 71-76, 78, 80-82, 84-101, 105, 107-109 (hereinafter collectively "Def.s' Rule 56").

or for some other purpose.  <u>See</u> Def.s' Rule 56, ¶¶11-13, 110.
As discussed below in Section D, the plaintiff's attempt to
create a factual dispute on that issue is without merit, both
factually and legally.  Investigator Lynch has consistently
maintained that the property was taken from plaintiff's motor
vehicle for safekeeping.  <u>See</u> Aff. of Larry Lynch of 5/8/00 in
Support of Search Warrant, ¶5 (Ex. 6 to Def.'s 11/23/04 Summ.
Judg.).  Plaintiff has offered no competent or compelling
evidence to the contrary.  In any event, as demonstrated below,
the officers' subjective intent is not a factor to be considered
in determining the reasonableness of their conduct.

Plaintiff's refusal to admit all of the undisputed facts,
however, does not mean that summary judgment is inappropriate.
Instead, "[o]nly disputes over facts that might affect the
outcome of the suit under the governing law will properly
preclude the entry of summary judgment." <u>Milne v. Int'l Ass'n of</u>
<u>Bridge, Structural Ornamental & Reinforcing Iron Workers, AFL-</u>
<u>CIO Local 15</u>, 156 F.Supp.2d 172, 177 (D. Conn. 2000), quoting
<u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

Most significantly, the plaintiff has conceded that he was not at 322A Aspetuck Ridge Road, New Milford, Connecticut, (the "Residence") after his arrest at approximately 5:46 p.m. on February 29, 2000. Def.s' Rule 56, ¶59. In addition, the plaintiff has failed to controvert the defendants' contention that "the plaintiff cannot confirm or deny what transpired at the Residence during the time period between his arrest (approximately 5:46 p.m. on February 29, 2000) and when the Search Warrant was executed (approximately 8:00 p.m. on March 1, 2000)." Def.s' Rule 56, ¶59.

Plaintiff claims that this factual contention "requires no response" because it is argument. Id. Whether the plaintiff can confirm or deny what transpired during a period of more than 24 hours at the Residence, while he was in jail, is most certainly a question of fact, not legal argument. Plaintiff is not a fact witness to those events and all he has accomplished by submitting snippets of deposition testimony is to challenge the credibility of the witnesses who were present. Because credibility assessments should not be made by the Court

concerning the cross motions for summary judgment, the plaintiff has failed to demonstrate the existence of a genuine issue of material fact in dispute.

In addition, pursuant to Local Rule 56(a)(1), the plaintiff's failure to controvert this statement of material fact with a citation to admissible evidence results in the fact being deemed admitted.  L.Civ.R. 56(a)(1).  This applies equally to the plaintiff's responses to paragraphs 33, 35, 36, 39, 41, 52, 58, 63, 86 – 93, 95, 101, 104, and 108–110.  Plaintiff responded to each of these statements of material fact by indicating that he "lacks insufficient knowledge or information . . . and thus he leaves the Defendants to their proof," or by trying to qualify his admissions without citing to admissible evidence.  Id.  Under Local Rule 56(a)(1), plaintiff's failure to cite to admissible evidence to contest these facts is the functional equivalent of admitting that all of these facts are undisputed.

Thus, plaintiff has essentially admitted the following new facts that were not before the Court during its review of the cross motions for summary judgment that were filed in 2004:

1.  After the plaintiff was apprehended, the Residence was considered a crime scene. Def.s' Rule 56, ¶33.

2.  Because it was a crime scene, between approximately 5:46 p.m. on February 29, 2000 and 8:00 p.m. on March 1, 2000, members of the New Milford Police Department stood watch at the Residence. Id., ¶ 33-55.

3.  No evidence was examined or seized during that time period of more than 24 hours. Id., ¶58.

4.  The plaintiff cannot confirm or deny what transpired during that time period. Id., ¶59.

5.  As a result of J.'s concern for her safety, J. told the officers that she intended to leave the Residence on March 2, 2000. Id., ¶63.

6.  J. showed the officers items that she thought might be of interest to law enforcement. Id., ¶63.

7.  The plaintiff was packing his belongings into the Firebird before the police arrived and had the engine hood in the open position. Id., ¶¶67-68.

8.  The Firebird wasn't locked. Id., ¶69.

9.  J. provided the Carmel police with evidence potentially linking the plaintiff to the disappearance of Robin Murphy. Id., ¶95.

10. The search of the Residence did not conclude until approximately 1:00 a.m. on March 2, 2000. Id., ¶99.

11. The Officers wanted to ensure that the Residence was secure because the plaintiff was being held on $500,000 bond and did not appear likely to be released any time soon and because J. had told them she was leaving the State. Id., ¶101.

12. Rather than leave the plaintiff's property in the Firebird, where it could be stolen, Investigator Lynch took it to the NMPD for safekeeping. Id., ¶104.

13. Investigator Lynch did not provide the plaintiff with a receipt for the items taken from the Firebird because the search warrants were sealed and the plaintiff was incarcerated. Id., ¶109.

14. The items taken from the Firebird were items the plaintiff was worried about somebody stealing. Id., ¶110.

These undisputed facts, coupled with the undisputed facts already established by the Court in its Ruling on Cross Motions for Summary Judgment, dated February 15, 2005, require that judgment enter for Investigators Lynch and Kaminski.

II.    __Argument__[3]

The plaintiff has claimed that the defendants' Renewed Motion for Summary Judgment should be denied because their assertion of the "safekeeping" or "community caretaking" exception to the warrant requirement is untimely.  Pl.'s Opp. to Def.s' Renewed Mot. Summ. Judg. of 1/19/07 at 1 (hereinafter "Pl.'s Opp.").  Alternatively, the plaintiff has argued that those exceptions to the warrant requirement do not apply because:  1) the defendants did not impound the plaintiff's vehicle; 2) the defendants were not acting in accordance with standard police procedures; and 3) the defendants were motivated by an investigatory purpose.  __Id.__ at 2.  These arguments are easily dispensed with in order.

---

[3]  Investigators Lynch and Kaminski submit this Memorandum of Law as an omnibus Sur Reply in Support of their Renewed Motion for Summary Judgment and in Opposition to the Plaintiff's Renewed Partial Motion for Summary Judgment.

**A.**     **There is No Requirement That the "Safekeeping" or "Community Caretaking" Exception to the Warrant Requirement Be Raised as an Affirmative Defense**

Plaintiff argues that the defendants' motion for summary judgment should be denied because the defendants rely on a "defense they did not plead and that they have never before raised." Pl.'s Opp. at 1. This is a gross misstatement of the law and an indication of how misplaced, both factually and legally, are his recent filings. This misguided effort to distract the Court from the real issue at hand should not be tolerated.

First, neither the Federal Rules of Civil Procedure, nor any precedent in this Circuit, requires an exception to the warrant requirement to be affirmatively plead by a defendant. To the contrary, it is well settled that defendants are <u>not</u> required to plead an exception to the warrant requirement as a special defense. <u>Ruggiero v. Krzeminski</u>, 928 F.2d 558, 562-63

(2d Cir. 1991); see also Fed. R. Civ. P. 8(c).[4]

In Ruggiero, the Second Circuit specifically rejected the plaintiff's argument.  The Court held that a party seeking to establish a Fourth Amendment violation bears the burden of proof and, even in cases in which a defendant claims an exception to the warrant requirement, "exceptions need not be plead affirmatively by the defense."  Id. at 562.  There is no dispute that exceptions to the warrant requirement are not among the categories of defenses that must be affirmatively pleaded.  Plaintiff's suggestion to the contrary, despite binding precedent, is improper.

Since the defendants had no obligation to plead these warrant exceptions as affirmative defenses, the plaintiff has no basis to complain.  The defendants could have waited until trial to argue this defense, as did the New Haven Police officers sued

---

[4]  The only defenses that need to be affirmatively plead are "accord and satisfaction, arbitration and award, assumption of risk, contributory negligence, discharge in bankruptcy, duress, estoppel, failure of consideration, fraud, illegality, injury to fellow servant, laches, license, statute of limitations, waiver, and any other matter constituting and avoidance or affirmative defense."  Fed.R.Civ.P. 8(c).

in <u>Ruggiero</u>. <u>Id.</u> at 562. In fact, a defendant would not ordinarily plead an affirmative defense, and risk assuming a burden of proof, unless absolutely necessary.

In addition, Investigator Lynch has consistently maintained, ever since the plaintiff's arrest 7 years ago, that the items removed from the Firebird were taken for safekeeping. <u>See</u> Aff. of Larry Lynch of 5/8/00 in Support of Search Warrant, ¶5 (swearing that items were placed in "Evidence Property Room for safekeeping, because the defendant (Howard Gombert JR.), was incarcerated and the victim had elected not to stay in the house") (Ex. 6 to Def.s' 11/23/04 Summ. Judg.); Aff. of Larry Lynch of 11/23/04, ¶21 ("these items were placed in the New Milford Police Evidence Room for safekeeping because the plaintiff was incarcerated and the victim, J, had elected not to stay at the residence.") (Ex. C to 11/23/04 Summ. Judg.); Aff. of Larry Lynch of 10/24/06, ¶49 ("I took them to the NMPD

Evidence/Property room for safekeeping") (Ex. D to 10/24/06

Summ. Judg.).[5]

Finally, when plaintiff requested permission to renew his

Motion for Summary Judgment during the October 3, 2006

teleconference with the Court, defense counsel responded that

there were other exceptions to the warrant requirement that had

not yet been addressed and which would form the basis of the

defendants' counter motion.  By seeking to renew his motion, the

plaintiff opened this door, which he now apparently wishes he

had kept closed.

The plaintiff's feigned surprise at this defense is

immaterial and of no consequence to resolution of the remaining

narrow issue in this case.

_____

[5]  The defendants' initial Motion for Summary Judgment was directed to a
rambling pro se complaint that was not pleaded in separate and distinct
counts, included far flung allegations attacking the validity of two separate
search warrants, and an equal protection claim arising from the alleged
failure to arrest the victim of the plaintiff's vicious sexual assault.
Although the defendants did not specifically address the safekeeping
exception, they sought judgment on all claims relying on their more broad
qualified immunity defense.  See Def.s' Mem in Supp. Mot. Summ. Judg. of
11/23/04, at 15-17.

**B.**     **There is No Requirement that the Defendants Impound the Plaintiff's Vehicle in Order for the "Safekeeping" or "Community Caretaking" Exception to the Warrant Requirement to Apply**

The plaintiff makes the bold assertion that, because the defendants did not impound the plaintiff's vehicle, it was not "within police custody" and they weren't entitled to carry out their community caretaking or safekeeping function.  Pl.'s Opp. at 23.  That would be a good argument – if the Connecticut Supreme Court had not already held otherwise.

In one of the seminal United States Supreme Court decisions addressing the community caretaking or safekeeping exception to the warrant requirement, South Dakota v. Opperman, 428 U.S. 364, 371 (1976), the Court reviewed with approval the Fourth Amendment jurisprudence of the state courts concerning inventory searches, including State v. Tully, 166 Conn. 126, 136 (1974). In Tully, a vehicle that was entered by police without a warrant was not impounded by the police, nor was it in their custody. Id. at 136.  Nonetheless, the Wilton police officer who entered the vehicle in his community caretaking capacity was held to have not committed a Fourth Amendment violation.  Id.

The criminal defendant in _Tully_ was issued a citation for driving with a suspended driver's license and was forced to leave his motor vehicle in a school parking lot because he could not legally drive.  _Id._ at 128.  After transporting Tully to the Wilton Police Department, the arresting officer returned to the school and, observing a guitar handle protruding from underneath a blanket, he entered the unlocked vehicle to remove the guitar for safekeeping.  _Id._ at 129.  In so doing, the officer stumbled upon a bag of marijuana and heroin.  _Id._

Tully was convicted of possession of drugs and his motion to suppress the seized drugs was denied.  _Id._ at 128.  As the plaintiff does in this case, Tully argued that the officers' conduct in removing items from his car was unlawful because the officer's "entry can be justified only if the vehicle was impounded and in police custody. . ."  _Id._ at 138.  The Court rejected that argument and affirmed the denial of Tully's motion to suppress, finding that based upon a reasonableness analysis, the officer had been lawfully engaged in his community

caretaking function when he inadvertently discovered the drugs. Id.

In another landmark community caretaking decision, Cady v. Dombrowksi, 413 U.S. 433 (1973), the Court specifically noted that "the police did not have actual, physical custody of the vehicle" from which an officer lawfully seized evidence pursuant to the caretaking exception. Cady, 413 U.S. at 446. Despite not having custody of the vehicle, the Court determined that the officer's conduct did not violate the Fourth Amendment because it was reasonable under the circumstances. Id.

More recently in this District, Judge Dorsey relied on Cady and Tully to grant summary judgment to police defendants in a civil action alleging an unlawful motor vehicle search. See Bloom v. Town of Stratford, 2006 WL 3388396 at 8-9. In Bloom, as here, the police performed a lawful, but warrantless, entry into a motor vehicle pursuant to the community caretaking exception. They did not impound the vehicle and did not have legal custody of the vehicle. Id. at 8-9. There are distinctions between Bloom and this case: for example, the

officer in <u>Bloom</u> did not take custody of property.  Nonetheless, the fact remains that the safe harbor of the safekeeping or community caretaking exception to the warrant requirement does not require the police to impound a vehicle.

Even if legal custody of the subject vehicle were a requirement, which it is not, there is no dispute that the police exercised control over the Firebird and the Residence for approximately 30 to 32 hours as they awaited a search warrant to gather evidence from Residence, which was a crime scene.  Def.s' Rule 56 Statement, ¶¶52-55.  During that 30 to 32 hour period, the police exercised their lawful duty to safeguard the plaintiff's property.  <u>Id.</u>  Having taken the plaintiff into custody the day before, the police would have been remiss had they not taken steps to protect the plaintiff's property.

The defendant officers went above the call of duty by obtaining both a written consent to search from J. and a search warrant to retrieve evidence from the Residence related to J.'s sexual assault.  <u>Id.</u>, ¶45-51.  Only after completing the search of the Residence did Investigator Lynch conclude that the

contents of the Firebird were not related to the sexual assault, but that they nonetheless should be safeguarded.  Id., ¶101. This occurred at approximately 1:00 a.m. on March 2, 2000, after the police had controlled the scene for more than 30 hours and at a time when no one was there to protect the plaintiff's property.  Id., ¶¶35-55, 99, 101.

There is no evidence that the plaintiff took any steps during this 30-32 hour period to safeguard his property. Instead, the unrebutted evidence is that Investigator Lynch felt an obligation to ensure that this property was safeguarded to protect it.  Plaintiff was incarcerated and J. was abandoning the Residence, after having been sexually assaulted there by the plaintiff.  Id., ¶101.  Based on these facts, the defendants' conduct was entirely reasonable and they are entitled to summary judgment.

## C.    Investigators Lynch and Kaminski Acted Pursuant to Appropriate Procedures

Putting form over substance, the plaintiff has made the blanket and overreaching argument that the defendants "were not

acting pursuant to standard police procedures" and that they are
therefore liable for damages. Pl.'s Opp. at 25. Despite the
plaintiff's claims, both Investigators Lynch and Kaminski
testified that the they were acting in accord with the New
Milford Police Department Order 89-03, entitled "Search and
Seizure" (Pl.'s Ex. I). See Deposition of Larry Lynch ("Lynch
Dep. Tr."), at 238-39; Deposition of William Kaminski ("Kaminski
Dep. Tr.") at 146.[6] Included within these standard police
procedures is a section concerning abandoned property and
inventory searches. Id. (Pl.'s Ex. I).

    Investigator Lynch testified that he was authorized by
Department Policy to remove the plaintiff's property from the
Firebird, without a warrant, "[i]n order to protect the
property." Lynch Dep. Tr. at 186-87. Investigator Kaminski,
when quizzed about his understanding the Department's search and
seizure policies, responded that he had conducted numerous

---

[6]  Excerpts of the depositions relied upon by the plaintiff in his Opposition
to Defendants' Renewed Motion for Summary Judgment, which were not already
provided to the Court by the plaintiff, are attached hereto as: Deposition of
Larry Lynch, Exhibit A; Deposition of William Kaminski, Exhibit B; Deposition
of J., Exhibit C; Deposition of James Mullin, Exhibit D.

safekeeping searches, without a warrant, pursuant to policies

that provide as follows:

> A.   We could search a car incident to arrest.  We
> could search a car that has been abandoned.  We can
> seize and keep things for safekeeping.  We could seize
> items that became lost.  I'm sure more will come to me
> as I think about it but – –

Kaminski Dep. Tr. at 52, 55.

Plaintiff's lawyers played a game of "gotcha" to try to

impeach the credibility of the defense witnesses by repeated

deposition questioning over a three day period.  They have

failed, however, in their quest to create a genuine issue of

material fact in dispute regarding this issue.  Their badgering

and redundant questions, as well as their more than 1,500 pages

of bates stamped subpoenaed documents, succeeded only in

squandering scarce judicial resources and copy paper.

Moreover, the leading Supreme Court decisions offer scant

guidance regarding what it means to act pursuant to "standard

police policies."  In Cady, there is a vague reference to the

officer acting pursuant to a "standard procedure in (that

police) department", yet there is no discussion regarding the

specifics of what a "standard" policy must include to pass muster.  Cady, 413 U.S. at 442–43.  Instead, there is a recognition that in many small jurisdictions, police officers spend a large part of their time dealing with motor vehicle issues.  The courts defer to their "standard" procedures, so long as police conduct is not unreasonable.  Id. at 443, 448.

In Opperman, the Court held that standardized procedures are "a factor tending to ensure that the intrusion would be limited in scope to the extent necessary to carry out the caretaking function."  Id., 428 U.S. at 375.  Yet, although standard procedures provide some assurance against excessive intrusions, the overriding consideration is whether the conduct of the police is reasonable under the circumstances, not the sufficiency of the policies.  Id. at 376.  That "reasonableness" determination must be decided based on the facts and circumstances of each case.  Id. at 375.

At least one Circuit has held that the absence of a standard practice is not fatal to a police officer's claim to be acting within the safekeeping exception to the warrant

requirement.  <u>United States v. Prescott</u>, 599 F.2d 103 (5th Cir.
1979).  In <u>Prescott</u>, the Court affirmed the denial of a motion
to suppress, finding that:

> [i]f an inventory search is otherwise reasonable, its
> validity is not vitiated by a police officer's
> suspicion that contraband or other evidence may be
> found . . . Although evidence that inventory searches
> are standard practice at a given police department is
> a strong indicator that a particular search was
> conducted for legitimate purposes, it is not an
> absolute prerequisite to such a finding.

<u>Prescott</u>, 599 F.2d at 106 (citations omitted).

Also, in <u>Colorado v. Bertine</u>, 479 U.S. 367, 375-76 (1987),
the Court noted that the presence of standard police procedures
does not eliminate the inherent discretion that police must
routinely exercise to perform their duties.  Instead, the Court
held that, "nothing in <u>Opperman</u> or [<u>Illinois v. Lafayette</u>, 462
U.S. 640 (1983)] prohibits the exercise of police discretion so
long as that discretion is exercised according to standard
criteria and on the basis of something other than suspicion of
evidence of criminal activity."  <u>Id.</u> at 375.

The plaintiff has conceded the obvious fact that he cannot admit or deny "Defendants' subjective state of mind." Def.s' Rule 56, ¶101. Such an inquiry regarding the defendants' state of mind would be inimical to the defendants' qualified immunity defense, in which the officers' subjective intentions are irrelevant. Bradway v. Gonzales, 26 F.3d 313, 319 (2d Cir. 1994). Investigator Lynch has steadfastly maintained that he took the items from the Firebird for safekeeping, not for an investigatory purpose. Since he was acting pursuant to standard police procedures, he and Investigator Kaminski are entitled to summary judgment for their exercise of discretion.

**D.     Investigators Lynch and Kaminski Did Not Act with an Ulterior Motive, and Even had they Done so, it Does Not Defeat the Reasonableness of the Their Conduct**

The plaintiff has argued that the defendants' motion should be denied because they acted with "ulterior motives." Pl.'s Opp. at 28-32. Plaintiff supports this contention with selected bits of deposition testimony, taken out of context, without providing the Court with the witnesses' full responses. Despite having acknowledged that the plaintiff cannot possibly know the

"Defendants' subjective state of mind;" Def.s' Rule 56, ¶101;
plaintiff nonetheless purports to ascribe ill motives to the
defendants.  Both the factual contentions and the legal
authorities upon which the plaintiff relies are easily
distinguishable.

The most blatant example of the plaintiff's
misrepresentation of the defendants' testimony concerns
Investigator Kaminski's recollection of when and why he looked
in the Firebird.  Plaintiff claims that Investigator Kaminski
"wanted to search the Firebird 'because it [was] a crime scene,
so [they] wanted to examine [the Firebird] before [they] left'
to determine if the Firebird contained any 'evidence of a
crime.'"  Pl.'s Opp. at 29 (quoting Kaminski Dep. Tr. at 128-
129).  This creative writing is not supported by any reasonable
interpretation of the record.

The full transcript of Investigator Kaminski's testimony
reveals that he was referring to the Residence where the
plaintiff committed his sexual assault as the crime scene, and
that his review of the Firebird was "cursory" to ensure there

was no contraband or weapons.  Id. at 129.  Investigator
Kaminski denied conducting a "search" of the Firebird and he
specifically testified that he did not go into the Firebird.
Id. at 117.  Investigator Kaminski also testified that, during
the time period that he watched the Residence to ensure that no
one entered, the rear hatch and the hood of the Firebird were
open.  Kaminski Dep. Tr. at 115-117.

Investigator Kaminski testified that he probably looked in
the Firebird while trying to stretch his legs during the long
hours that he watched the Residence as other officers obtained a
search warrant.  Id. at 130.  However, Investigator Kaminski
testified as follows:

Q.   Did you search anything other than the house?

A.   No.

Kaminski Dep. Tr. at 127.

Investigator Kaminski testified that he probably looked in
the Firebird "because everything was opened up" and for
"[g]eneral curiosity, what's in there, and to make sure there is
no contraband, maybe a weapon."  Id. at 128-129.  He further

testified that, during the time that he was at the Residence on February 29, 2000, he was not aware that the Carmel Police Department was investigating Mr. Gombert.  Id.  Investigator Kaminski could not recall "exactly at what point" he came to know about that other investigation.  Id. at 125.

Put in its proper context, Investigator Kaminski was standing guard duty at the Residence, which was a crime scene. His cursory inspection of the Firebird was entirely reasonable and consistent with officer safety concerns.  Based upon this undisputed evidence, no rational jury could conclude that Investigators Lynch and Kaminski committed a violation of the plaintiff's rights.  Because the plaintiff has no independent evidence to challenge this version of events, Investigators Lynch and Kaminski are entitled to summary judgment.

Similarly, plaintiff has misstated the significance of Whren v. United States, 517 U.S. 806, 811-812 (1996) and United States v. Banks, 150 F.Supp. 2d 548 (S.D.N.Y. 2001).  In both Whren and Banks, challenges to warrantless police searches were rejected.  Moreover, in Whren, the Court held that,

"[s]ubjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis."  150 F.Supp.2d at 813. Indeed, in the Fourth Amendment context, an officer's improper motive will <u>not</u> invalidate the action taken "so long as the circumstances, viewed objectively, justify the action."  <u>Id.</u>

In <u>Banks</u>, the Court denied a motion to suppress evidence uncovered during a warrantless inventory search, despite the fact that the officer "also conducted the search in part to determine whether the van contained any contraband or evidence." <u>Id.</u> at 552.  The Court specifically held that "[e]ven if [the officer] did harbor a hope or motive that the [vehicle] would reveal evidence, such a motive does not invalidate an otherwise valid inventory search conducted pursuant to reasonable police procedures."  <u>Id.</u> at 554.  The Court further noted that the procedures need not be in writing; testimony regarding standard practices is sufficient.  <u>Id.</u> at 553.

Plaintiff hasn't cited a single case in which property taken pursuant to the "safekeeping" or "community caretaking" exception resulted in a finding of liability against defendants

because of ulterior motives, as the plaintiff urges here. Instead, in each case the end result is the denial, or affirmance of a denial, of a motion to suppress evidence.  See e.g. Bertine, 479 U.S. 367 (1987) (motion to suppress denied, evidence deemed admissible); Opperman, 428 U.S. 364 (1976) (motion to suppress denied, evidence deemed admissible); Cady, 413 U.S. 433 (1973) (petition for writ of habeas corpus denied – evidence deemed admissible); Banks, 150 F.Supp. 2d 548 (motion to suppress denied, evidence deemed admissible); see also United States v. Ponce, 8 F.3d 989 (5th Cir. 1994) (motion to suppress denied, evidence deemed admissible); United States v. Best, 415 F.Supp.2d 50 (D. Conn. 2006) (motion to suppress denied, evidence deemed admissible) United States v. Mundy, 806 F.Supp. 373 (E.D.N.Y. 1992) (motion to suppress denied, evidence deemed admissible).

If the plaintiff had tried to suppress the items removed from the Firebird he most certainly would have lost.  That point is reinforced by this Court's Ruling on Cross Motions for Summary Judgment, in which the Court rejected the plaintiff's

challenge to the validity of the May 8, 2000 warrant concerning this very same property.  See Ruling on Cross Motions for Summary Judgment of 2/15/05, at 11 (the "Ruling").  Since this Court has already validated the May 8, 2000 warrant, which authorized the New Milford Police to retain the plaintiff's property removed from the Firebird, there is no possibility that the plaintiff could ever have this evidence suppressed.  For this additional reason, the defendants are entitled to summary judgment.

As the plaintiff correctly notes, there are at least three reasons for police to take items into their custody for safekeeping:  1) to protect the owner's property; 2) to protect police against claims or disputes over lost or stolen property; and 3) to protect the police from potential danger.  Opperman, 428 U.S. at 369.  All of these reasons existed in this case, and this Court should defer to Investigator Lynch's reasonable decision to safeguard the plaintiff's property.  That decision is fully supported by the evidence and the law.

Based on the undisputed facts, the property would have been left unattended in the plaintiff's car, subject to being stolen or vandalized, had it not been safeguarded by the police. The plaintiff has admitted that he was packing these belongings in his vehicle when he was arrested and he was worried about these items being stolen. Def.s' Rule 56, ¶¶67-68, 110.

In addition, plaintiff ultimately sued J., claiming that she dissipated his property while he was in jail. Investigator Lynch wisely documented the fact that he took the property for safekeeping. Id., ¶¶107-109. Finally, Investigators Lynch and Kaminski were entitled to make a cursory examination of the Firebird, during the 32 hours between the plaintiff's arrest and the execution of the search warrant, to ensure that there were no weapons or other items that could present a danger to them or to others. Kaminski Dep. Tr. at 128-129.

### E.     Investigators Lynch and Kaminski Are Entitled to Qualified Immunity Because Their Conduct was Objectively Reasonable

Police officers are entitled to qualified immunity insofar as they are engaged in a discretionary function and their

conduct does not violate a clearly established federal statutory or constitutional right. <u>Curry v. Syracuse</u>, 316 F.3d 324, 334 (2d. Cir. 2004); <u>Lennon v. Miller</u>, 66 F.3d 416, 420 (2d Cir. 1995). Investigator Lynch's conduct in removing property from the plaintiff's Firebird for safekeeping did not violate a clearly defined right. That is, if removing the property from the Firebird was unlawful, the unlawfulness was not apparent to the officers.

To determine whether a right is clearly established for qualified immunity purposes, courts must consider whether the decisional law of the Supreme Court and the applicable circuit court supports the right in question. <u>Chipperini v. Crandall</u>, 253 F. Supp. 2d 301, 307 (D. Conn. 2003). A clearly defined right is one whose existence is indicated by prior caselaw with reasonable specificity. <u>In re State Police Litigation</u>, 88 F.3d 111, 123 (2d Cir. 1996). The question is what a reasonable person in the defendants' position should have known about the constitutionality of the conduct. <u>Keeney v. City of New London</u>, 196 F. Supp. 2d 190, 199 (D. Conn. 2002). A right may be

clearly defined even if the defendants' actions had not previously been held unlawful, but only if the unlawfulness is apparent.  State Police, 88 F.3d at 123.

The defendants' actions in the present case did not violate a clearly established right.  Similar actions have been upheld under the community caretaking or safekeeping warrant exceptions.  As discussed above, the Supreme Court and the Second Circuit have identified that one function of the police is to safeguard the property of individuals.  They have recognized that seizing property in this capacity is not a constitutional violation.  See Colorado v. Bertine, supra; South Dakota v. Opperman, supra; Cady v. Dombrowski, supra; United States v. Markland, 635 F.2d 174 (2d Cir. 1980).

Neither the Supreme Court nor the Second Circuit has held that removing property from an open car, parked where its contents are in danger of being stolen, can give rise to a Fourth Amendment violation.  Indeed, neither the Supreme Court nor the Second Circuit has limited a search under the community caretaking exception to impounded cars.  Although the leading

Supreme Court cases concern impounded cars, courts have upheld the exception for searches involving automobiles which were parked on private property and which were not impounded.

For example, the Ninth Circuit in United States v. Scott found that removing property from a car that was not going to be impounded was a legitimate caretaking function.  665 F.2d 874, 876 (9th Cir. 1981).  In that case, an individual was arrested, and his car was parked on private property.  Id. at 874.  The arresting officer informed him that he could have the car impounded for safekeeping.  Id.  The arrestee did not want the car impounded, and instead wanted to arrange for someone to retrieve the car at a later time.  Id.  The officer then removed valuables which were in plain view for safekeeping.  Id.  The Ninth Circuit determined that the removal of the items did not violate the Fourth Amendment.  Id. at 876.  The court further held that entering the legally parked car and removing items in plain view for safekeeping fell within the community caretaking exception articulated in South Dakota v. Opperman, even though the car had not been impounded before the inventory search.

Id.; see also Tarantino v. Syputo, 2006 WL 1530030 (N.D. Cal. 2006) (granting police officer's summary judgment on plaintiff's Fourth Amendment claim based upon qualified immunity and community caretaking exception to warrant).

Similarly, the Eighth Circuit has upheld removing items from a lawfully parked automobile after the driver was arrested. United States v. Spencer, 884 F.2d 360, 361 (8th Cir. 1989). In that case, police officers took into custody an intoxicated person who had been sitting in his legally parked car and transported him to police headquarters. Id. The officers then returned to the car and removed items in plain view that appeared to have some value and thus were in danger of being stolen. The officers did not impound the car, because it did not present a traffic problem. Id. The court determined that the search was reasonable as an inventory search as articulated in South Dakota v. Opperman. Id.

These cases demonstrate that, although the Supreme Court often applies the community caretaking exception to impounded automobiles, the exception is not limited to impounded

automobiles.  Multiple courts have upheld the exception when automobiles are left lawfully parked on either public or private property.

The Second Circuit has not decided a case analogous to ours.  Connecticut state law, however, supports the proposition that items may be removed for safekeeping from a car that is not impounded.  See State v. Tully, supra.  Judge Dorsey of this District upheld as constitutional, pursuant to the community caretaking exception, the search of a car parked at a public park.  Bloom v. Town of Stratford, supra.  Additionally, the Second Circuit upheld police removing property from a house for safekeeping.  Notably, there is a much greater expectation of privacy in a house than in an automobile.  Dale v. Bartels, 732 F.2d 278, 284 (2d Cir. 1984); see also Schiff v. Kerrigan, 625 F. Supp. 704, 712 (D. Conn. 1986).

In light of the law regarding removing property from automobiles under the community caretaking exception, it was not apparent to the officers that their actions might be unlawful. Their actions did not contravene any clearly defined right as

articulated by the Supreme Court or the Second Circuit.  At the very least, reasonable officers could have disagreed about the legality of their actions.  Hart v. Meyers, 183 F. Supp. 2d 512, 525 (D. Conn. 2002).

The plaintiff also argues that Investigator Lynch's motive when he removed items from the Firebird was not to safeguard the property, but rather to look for evidence relating to a crime. However, qualified immunity may not be rebutted by evidence that the defendants' conduct was improperly motivated, and evidence concerning subjective intent is irrelevant to the qualified immunity defense.  Crawford-El v. Britton, 523 U.S. 574, 588 (1998).

The officers finished their search of the house at 322A Aspetuck Road at approximately 1 a.m. on the morning of March 2, 2000.  Def.s' Rule 56, ¶99.  The plaintiff was being held on a high bail, and J., fearing for her safety, informed them that she planned to leave and not return.  Id., ¶101.  The plaintiff's Firebird was unlocked, and the trunk was open and filled with various containers.  Id., ¶105.  Investigator Lynch,

exercising his discretion, took the items that were in open view and accessible to passers by back to police headquarters.  He placed them in the evidence room without opening them.  Id., ¶104.

The actions of Investigators Lynch and Kaminski with respect to the property in the Firebird were objectively reasonable, and in accordance with the community caretaking exception.  Plaintiff alleges that removing the property from the Firebird was a pretext for a warrantless search related to a criminal investigation.  Even if their hope or intent had been to uncover further evidence of criminal activity, subjective intent does not vitiate a lawful caretaking function as long as the circumstances, viewed objectively, justify that action.  Bradway, 26 F.3d at 319.  The defendants did no more than they were objectively permitted to do.  Even if they had an improper motive, that motive is entirely irrelevant to their defense of qualified immunity.  Id.

Investigator Lynch did not violate a clearly defined right when he removed property from the plaintiff's Firebird for

safekeeping.  The defendants' actions with respect to the property were objectively reasonable.  If they had an improper motive, which they deny, they are still entitled to qualified immunity.  At the very least, reasonable officers could have disagreed about the legality of removing the property from the Firebird.  That is all that is required for qualified immunity.

Furthermore, this Court has already upheld as valid the May 8, 2000 search warrant which authorized the opening of the containers that were removed from the Firebird on March 2, 2000. See Ruling at 11.  Therefore, any violation by the defendants arising from the removal of that property is limited in time from March 2, 2000 to May 8, 2000.  If the plaintiff had filed a Motion to Suppress any of this evidence, it surely would have been denied for the same reason that this Court upheld the validity of the May 8, 2000 warrant.

Similarly, plaintiff's subsidiary claim that the defendants can be held liable for conduct after the issuance of the May 8, 2000 warrant was obtained, or for improperly documenting the handling of the property, does not rise to the level of a

constitutional claim.  See Cady, supra ("we do not deem it constitutionally significant that [certain property] [was] not listed in the return of the warrant.  The ramification of the 'defect,' if such it was, is purely a question of state law.").

Once the May 8, 2000 warrant was obtained, it authorized the police to hold the property for law enforcement purposes. From that point forward, the plaintiff's remedy for retrieval of the property was limited to the procedures under the Connecticut criminal code, including Connecticut General Statutes §54-36f, et seq., which plaintiff invoked by filing motions with the state criminal courts.  Ruling at 6.  He has no further federal remedy on this issue, which is now moot since the property has been returned and/or properly disposed.  Id.

Based on the undisputed facts, the Court's prior ruling affirming the validity of the May 8, 2000 warrant, and the case law discuss herein, this Court should enter summary judgment in favor of the defendants because they are entitled to qualified immunity for their actions.

**III.**    <u>**Conclusion**</u>

For the foregoing reasons, defendants Larry Lynch and William Kaminski respectfully request that the Court deny the plaintiff's Motion for Partial Summary Judgment and grant their Renewed Motion for Summary Judgment.

DEFENDANTS,
LARRY LYNCH and WILLIAM KAMINSKI

BY___/S/_____
  JAMES N. TALLBERG
  Federal Bar No.: ct17849
  Karsten, Dorman
   & Tallberg, LLC
  8 Lowell Road
  West Hartford, CT 06119
  Telephone: 860-233-5600
  Facsimile:860-233-5800
  jtallberg@karstendorman.com

## **CERTIFICATION**

I hereby certify that, on February 8, 2007, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing.  Parties may access this filing through the Court's system.

/SS/_____
James N. Tallberg