UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| HOWARD JOHN GOMBERT, JR. | : | CIVIL ACTON NO.: |
| Plaintiff, | : | 3:01 CV 1913 (DJS) |
| | : | |
| v. | : | |
| | : | |
| LARRY LYNCH AND WILLIAM KAMINSKI | : | |
| Defendants. | : | |
| | : | February 20, 2007 |

**PLAINTIFF'S SUR-REPLY IN OPPOSITION TO DEFENDANTS' RENEWED MOTION FOR SUMMARY JUDGMENT**

Despite filing a forty page Sur-Reply in Support of their Renewed Motion For Summary Judgment and In Opposition to Plaintiff's Renewed Partial Motion for Summary Judgment (the "Omnibus Reply") in blatant violation of Local Rule 7(d), Defendants still have not cited a single case upholding a search under the community caretaking doctrine where, as here, the search was conducted without a warrant, of a car on private property, where the car was not in police custody, where no standardized police procedures applied, and where the officers had clear investigatory motives in making the search. As Gombert argued in his Motion for Partial Summary Judgment ("Gombert's Motion"), his Opposition to Defendants' Renewed Motion for Summary Judgment (the "Opposition") and in his Reply Brief In Support of His Motion for Partial Summary Judgment, all of which Gombert incorporates herein by reference, the totality of these circumstances makes it clear that Defendants were not acting to safekeep Gombert's property when they seized it from the Firebird on March 1 and 2, 2000. Accordingly, Defendants' Renewed Motion should be denied, Gombert's Motion should be granted, and the case should proceed to a jury trial on Gombert's damages.[1]

---

[1] All capitalized terms used in this brief are intended to be used as defined in Gombert's Motion, the Opposition, or in his reply brief unless otherwise defined herein.

A.  **That Defendants Were Not Required to Plead The Safekeeping Theory Does Not Excuse Their Hide-The-Ball Tactics.**

Defendants concede that they failed to raise the "safekeeping" argument in their 2004 cross-motion for summary judgment. (Omnibus Reply at 12 n.5). Placing form over substance, Defendants seek to excuse this failure by claiming they had no obligation to plead safekeeping as a defense.

Although exceptions to the Fourth Amendment's warrant requirement need not be specially pled, the law is clear that litigants may not sandbag the Court or their opponents by delaying the presentation of arguments, even if the arguments need not be pled. *Paolitto v. Brown E.&C. Inc.*, 151 F.3d 60, 68 (2d Cir. 1998) (affirming denial of a motion that was based on a theory that did not need to be pled, but that the plaintiff had never previously argued and referring to such tactics as "sandbagging"); *see Baksh v. James Capt. & Citibank, N.A.*, 2000 U.S. Dist. LEXIS 19580, *5 (E.D.N.Y. 2000)[2] (characterizing a late filed motion as "sandbagging" and stating that "[a]lthough that characterization was as it affected the defendants, the Court was 'sandbagged' too, in that the legal bases upon which it had carefully determined the motion should be properly decided were radically shifted"). Yet, in the Renewed Motion, Defendants offer a new safekeeping theory, affidavits from witnesses they never disclosed, and factual assertions that Defendants failed to make in 2004 or ever before.[3] *See Fleming v. Verizon N.Y. Inc.*, 2006 U.S. Dist. LEXIS 68632, *22-24 (S.D.N.Y. 2006) (ruling against a litigant that presented new, undisclosed evidence on a motion for summary judgment). Defendants' litigation tactics are completely improper.

---

[2]  Copies of all unreported cases are attached hereto as Exhibit A.

[3]  Defendants never disclosed at least Investigator Mullin and Officer Marino as witnesses to the pertinent events. Defendants are therefore not entitled to rely on affidavits from those individuals on summary judgment and they should be stricken. *See* Fed. R. Civ. P. 37(c)(1).

Furthermore, Defendants' claim that they have "consistently maintained, ever since the plaintiff's arrest 7 years ago," that they took property from the Firebird for safekeeping is simply false. Investigator Lynch testified under oath in Gombert's criminal trial that Defendants had searched and seized items from the Firebird pursuant to a valid search warrant. 2/27/2002 Transcript of Proceedings in *State v. Gombert*, CR00-0110385S at pp. 1-2.[4] At no time during his testimony did Lynch suggest that Defendants took the property from the Firebird for "safekeeping," which further demonstrates that Defendants' safekeeping argument is nothing more than an afterthought.[5] *See Tetra Technologies, Inc. v. Harter*, 823 F. Supp. 1116, 11120 (S.D.N.Y. 1993) ("Here the parties moving for summary judgment saved the claim of incomplete license coverage as their best shot, with the obvious purpose of sandbagging their adversary with a brand new factual contention. Such a procedure is foreign to the spirit and objectives of the Federal Rules of Civil Procedure").

**B.     Defendants' Warrantless Search And Seizure of Property From The Firebird Was Unreasonable And Cannot Be Justified By The Community Caretaking Doctrine.**

   *1.     A Car Must Be In Police Custody Before Its Contents May Be Inventoried.*

Gombert's argument in support of his Motion and Opposition was crystal clear: no court has ever held that a warrantless search and seizure is constitutional under the community caretaking doctrine where, as here: (1) the car searched is on private property; (2) the car is not in police custody during the search; (3) the search is not conducted pursuant to standard police procedures; and (4) the officers conducting the search had investigatory motives. In the Omnibus Reply, Defendants essentially concede Gombert's argument by their failure to cite a

---

[4] A copy of this transcript is attached as Exhibit A to the Attorney Affidavit of Sara R. Simeonidis.

[5] Notably, the criminal court ultimately decided not to admit evidence seized from the Firebird because, *inter alia*, the legality of Defendants' search was questionable. 2/27/02 Tr. at 6. Thus, Defendants' contention that a motion to suppress evidence removed from the Firebird "surely would have been denied" is actually disproved by what actually happened in Gombert's criminal case. (Omnibus Reply at 37).

single case in which all four circumstances are present and a warrantless search nonetheless was upheld as "safekeeping".

Instead, Defendants rely on cases that prove Gombert's argument. For example, Defendants cite *State v. Tully*, 166 Conn. 126 (1974) and *Cady v. Dombrowski*, 413 U.S. 433 (1973) and argue fervently that these case demonstrate that a car need not be impounded for the safekeeping exception to apply. Of course, Gombert did not argue that a car had to be impounded, he simply argued that the car had to be in policy custody as were the cars in both *Tully* and *Cady*. *Cady*, 413 U.S. at 446 (noting that the car had been towed "at the officers' directions"); *Tully*, 166 Conn. at 136-37 (noting that the car had been parked in a vacant lot "because Officer Scott directed that it be parked there"). Police custody or control over a vehicle has always been a prerequisite for an inventory search. *See Bertine*, 479 U.S. at 741; *Opperman*, 428 U.S. at 369. In any event, the courts in both *Tully* and *Cady* relied heavily on the fact that there was no evidence of investigatory motives and that the searches conducted in those cases were made pursuant to clear, standardized police procedures. *Cady*, 413 U.S. at 446; *Tully*, 166 Conn. at 137-38. Thus, *Tully* and *Cady* only prove the veracity of Gombert's global argument that Defendants' safekeeping argument fails because, among other things, Defendants had an investigatory purpose and did not follow standard procedures here.[6]

Moreover, as a factual matter, the Firebird was legally parked at Gombert's Residence *before* his arrest: Defendants' actions did not cause the Firebird to stop and park at the Residence and thus Defendants served no community caretaking function by removing property from the Firebird. *See People v. Williams*, 145 Cal. App. 4th 756, 762 (Dec. 13, 2006) (noting

---

[6] *Bloom v. Stratford*, 2006 WL 3388396 (D. Conn. 2006), is so factually dissimilar that it does not warrant discussion. In *Bloom*, the court expressly noted that the officers were not suspected of having investigatory motives, the plaintiff had asked the officers to secure the vehicle, and the officers did not remove any property from the plaintiff's vehicle. Those facts are exactly opposite of the facts present here and thus *Blum* is inapposite.

no community caretaking function by impounding car legally parked at curb in front of home where there was no greater possibility that car would be vandalized than if officer had not stopped and arrested defendant as he returned home).[7]  The totality of these circumstances demonstrate that Defendants' warrantless search and seizure of property from the Firebird cannot be rescued under the safekeeping doctrine and the Renewed Motion should be denied.[8]  *See Corbin v. Texas*, 85 S.W.3d 272, 280 (Tx. Crim. App. 2002) (Cochran, J., concurring) ("[C]ourts must examine both the officer's subjective belief that the caretaking is necessary *and* whether his conduct is objectively reasonable under the totality of the circumstances") (emphasis in original); *Bertine*, 479 U.S. at 371; *Opperman*, 428 U.S. at 370 n. 5.

    2.    *Defendants Failed To Refute That Their Actions Were Not Authorized By Any NMPD Policy or Procedure.*

Defendants do not dispute that a search is only valid under the community caretaking doctrine if it is conducted pursuant to standard police procedures.  (Omnibus Reply at 17-19). As they did in their depositions, Defendants also fail to identify any single NMPD policy or procedure authorizing the March 1 and 2 search and seizure of items from the Firebird.[9]  (*Id.* at

---

[7] In rejecting the community caretaking function, the *Richards* court found significant that defendant's vehicle was parked in residential neighborhood and that other cars were also parked on street.  145 Cal. App. 4th at 762.  Significantly, Defendants have never argued that they even considered conducting a safekeeping search of the other vehicles at the Residence on March 1 and 2, 2000, including a red Pontiac Fiero and a blue Pontiac GrandAm.

[8] Defendants' alternative argument that they had control over the Firebird because they were preserving the scene at the Residence is frivolous.  Not only do they cite no law to support this vast definition of "control," and despite their own testimony to the contrary, Defendants' entire argument is premised on the notion that they were not interested in the Firebird as part of the crime scene and thus they would have had no reason to control it. Defendants simply cannot have it both ways.

[9] Defendants note that the NMPD policies and procedures provide for inventory searches and the seizure of abandoned property but, for obvious reasons, Defendants ignore their own testimony that neither of those policies apply here.  *See generally* (Gombert's Opposition at 25-27).  Moreover, any reliance on the abandoned property exception in the NMPD's policies would conflict with clear law.  *See, e.g., .U.S. v. Richards*, 147 F.Supp. 2d 786, 788 (E.D. Mich. 2001) (granting motion to suppress and holding that car, located on private property, was not abandoned when defendant had already turned off engine and lights and exited the car normally before running in response to police inquiry).

18-19). Instead, Defendants contend that Lynch's belief that he was generally authorized "to protect property" is sufficient to satisfy the standardized procedure requirement. (*Id.* at 18).

However, the cases are clear that a community caretaking search will only be upheld where officers acted pursuant to established, standard procedures. *Colorado v. Bertine*, 479 U.S. 367, 374 n. 6 (1987) (requiring standardized criteria for community caretaking searches); *U.S. v. Maple*, 348 F.3d 260, 262 (D.C. Cir. 2003) (not safekeeping because the search "clearly was not expressly authorized" by written departmental procedures); *U.S. v. Banks*, 150 F.Supp. 2d 548, 551 (S.D.N.Y. 2001) (noting that the officers acted pursuant to "written policies concerning inventory searches"); *Richards*, 147 F. Supp. 2d at 789-90 (not safekeeping because seizure not "conducted according to standardized criteria or an established routine"). The presence of standardized procedures is an objective indication that the search was not "a ruse for a general rummaging in order to discover incriminating evidence." *Florida v. Wells*, 495 U.S. 1, 4 (1990). If Defendants' argument were correct, the standardized policy requirement would cease to have meaning because it could be satisfied by a post-hoc claim that the officer was authorized generally "to protect property," which is precisely what Defendants offer here. Defendants' argument is not correct and that is precisely why they have cited no law to support it.[10] Accordingly, the safekeeping doctrine does not apply and the Renewed Motion should be denied.

  3.  *The Community Caretaking Doctrine Does Not Apply Because Defendants Seized Property From The Firebird For Investigatory Purposes.*

Contrary to Defendants' unsupported contentions, part of this Court's reasonableness inquiry involves examining Defendants' subjective belief that caretaking was necessary. *See*

---

[10] *U.S. v. Prescott*, 599 F.2d 103 (5th Cir. 1979) is inapposite. In *Prescott*, despite a lack of evidence that inventory searches were routinely conducted, the search was still upheld under the community caretaking doctrine because it was a "standard police practice" under established common law and because the search was necessitated by special concerns for public safety once the officer observed a gun and ammunition in plain view. Defendants have not cited a single case upholding a search and seizure under the circumstances presented in Gombert's case and thus *Prescott* adds nothing to Defendants' argument.

*Cady*, 413 U.S. at 441 (the touchstone of the community caretaking doctrine is that the police function is "totally divorced from the detection, investigation, or acquisition of evidence" of a crime); *Banks*, 150 F.Supp.2d at 554 ("[T]he key issue is whether the officers conducting the inventory search 'acted in bad faith or solely for the purpose of investigation.'"); *Corbin*, 85 S.W.3d at 280 ("if [officer's] subjective purpose is to investigate crime or gather evidence for a criminal charge, he is not acting as a community caretaker and these doctrines cannot be used, post hoc, to justify his conduct"). Indeed, as a matter of pure common sense, if the Defendants' actual, subjective purpose in going to the Firebird was to investigate a crime, the sole purpose of the search could not have been for safekeeping as the law requires.

Defendants' contention that Gombert took their testimony out of context to make it appear that Defendants searched the Firebird for investigatory purposes is false. (Omnibus Reply at 22-25). Of course, Defendants failed to prove their accusation by quoting the "full transcript" of Kaminski's testimony because it only confirms Gombert's contentions:

> Q. Do you know why they [Investigator Lynch and Mullin] wanted to look at [the Firebird]?
>
> A. Not specifically, no. But I'm sure it had something to do with just to make sure. I mean, the car was open and, you know, we should check it. I mean, it is a crime scene, so they wanted to examine it before we left.
>
> Q. So when you looked at it, were you looking at it for evidence of a crime?
>
> A. Yes.

(Kaminski Depo. Tr. at 130-131).

Moreover, what Defendants failed to refute in the Omnibus Reply makes it abundantly clear that they searched the Firebird for investigatory purposes, not for safekeeping:

- that Lynch, and his fellow investigator Mullin, were aware of and cooperating with other agencies investigating Gombert for other crimes. (Mullin Depo. Tr. at 111-113; *see also* Lynch Depo. Tr. at 153).

- that despite their alleged "safekeeping" motive they did not impound the Firebird -- Gombert's most valuable property -- and cannot even state whether they secured the Firebird by locking it. (Lynch Depo. Tr. 178-180; Kaminski Depo. Tr. at 174-175).

- that Lynch marked the property seized from the Firebird as "Evidence," despite that it could been labeled as being "Held for Safekeeping." (Lynch Depo. Tr. at 53-55; Kaminski Ex. 4).

- that Defendants refused to return Gombert's property to him, despite his nearly immediate (and repeated) demand for its return, (Ex. N to 1/19/07 Hole Affidavit), but instead began releasing Gombert's property to other law enforcement agencies, which was "not a common occurrence" if his property really was being held for safekeeping. (Lynch Depo. Tr. at 81-83 (release of Gombert's property), 133-134 (Lynch had never refused before to return property being held for safekeeping)).

As stated in Gombert's Motion and Opposition, under the totality of the circumstances, including the lack of police custody or control over the Firebird, Defendants' failure to follow any articulated NMPD policies regarding safekeeping searches, and the strong evidence that Defendants had an investigative purpose in searching the Firebird, no reasonable jury could find that Defendants engaged in a reasonable community caretaking search of the Firebird on March 1 and 2, 2000. Defendants' Renewed Motion should therefore be denied and, consequently, Gombert's Motion should be granted.

C.  **Defendants Cannot Rebut The Presumption That Their Warrantless Search of The Firebird Was Unreasonable And They Are Not Entitled To Qualified Immunity.**

Gombert argued in his Motion and Opposition that the Court's holdings in the Ruling are law of the case, including that Gombert's right to be free from warrantless searches and seizures is "clearly established". Defendants implicitly conceded this point by failing to even mention it in their Omnibus Reply. Thus, this Court should adhere to its prior Ruling and find that Gombert's rights at issue here are clearly established for purposes of Defendants' qualified immunity defense.

Moreover, the law is clear that "warrantless searches are presumptively <u>unreasonable</u>" under the Fourth Amendment to the Constitution. *Kerman v. New York*, 261 F.3d 229, 235 (2d

Cir. 2001). It is undisputed, and indeed the Court already has found, that Defendants did not have a warrant to search and seize property from the Firebird on March 1 and 2, 2000. Thus, Defendants' conduct in searching and seizing items from the Firebird is presumptively unreasonable.

Defendants completely ignore this presumption and conclude that their actions were reasonable because "[n]either the Supreme Court nor the Second Circuit has held that removing property from an open car, parked where its contents are in danger of being stolen, can give rise to a Fourth Amendment violation." (Omnibus Reply at 31). At bottom, then, Defendants' argument is that their actions are presumptively reasonable unless either the Second Circuit or the Supreme Court already has found them to be unreasonable in a factually identical case. As noted, this method of analysis turns well-established precedent on its head.

Further, the Supreme Court has clearly held when discussing qualified immunity that "a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though 'the very action in question has [not] previously been held unlawful." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002) (rejecting qualified immunity defense even though exact conduct in question had not previously been held unconstitutional). Indeed, the Supreme Court has made it abundantly "clear that officials can still be on notice that their conduct violates established law even in novel factual circumstances." *Id.* Thus, that the Supreme Court and Second Circuit have not decided a case factually identical to this one means only that the general constitutional principle that warrantless searches are presumptively unreasonable controls.

Moreover, Defendants' blatant disregard for NMPD policy, which requires officers to obtain a warrant when feasible (as it was here), is even more flagrant considering that

Defendants have not cited a single case where, as here, (1) officers conducted a search of a car that was not in police custody; (2) the officers had an investigatory purpose; and (3) the officers were not acting pursuant to any standard procedure.[11] Where Defendants acted in contravention of their own policies, clearly established law, and without any supporting law whatsoever, it cannot possibly be said that such conduct is "objectively reasonable" and thus Defendants are not entitled to qualified immunity.

Defendants' argument that their subjective intent is irrelevant to qualified immunity misses the point. Gombert's argument with respect to motives for purposes of qualified immunity is simple: Defendants cannot prevail in proving, as they must, that reasonable officers would not have known that searching and seizing property without a warrant and for investigatory purposes is a violation of the Fourth Amendment. Defendants' investigatory purpose is thus relevant to the qualified immunity defense because it is a fact, like the fact that the NMPD has no relevant policy and procedure and that the Firebird was on private property, that must be taken into account when determining what a "reasonable officer" would have done under the circumstances on March 1 and 2. The law simply cannot be divined in the abstract as Defendants appear to contend. Because no reasonable officer would have acted as Defendants did, they are not entitled to qualified immunity.

---

[11] The two cases that Defendants rely heavily on in their qualified immunity argument have nothing to do with that defense. Indeed, instead of supporting Defendants' position, Defendants' cases are contrary to it because in both cases the searches in question were conducted pursuant to clear police procedures. *U.S. v. Spencer*, 884 F.2d 360, 361 (8th Cir. 1989) (finding an inventory search to be reasonable only because "the officers followed this [standard police] procedure."); *U.S. v. Scott*, 665 F.2d 874, 877 (9th Cir. 1981) ("We also conclude that Elms followed 'standard police procedures' when he entered the car and removed the treasury check."). Such procedures are absent here and thus the community caretaking doctrine is inapplicable as a matter of law.

## CONCLUSION

For all of the foregoing reasons, and those stated in Gombert's Motion, his Opposition, and his reply brief, the Defendants' Renewed Motion should be denied and Gombert's Motion should be granted.

>PLAINTIFF,
>HOWARD JOHN GOMBERT, JR.
>
>____/s/_____
>Ben M. Krowicki [ct 06153]
>Sara R. Simeonidis [ct25566]
>Brian R. Hole  [ct 26608]
>Bingham McCutchen LLP
>One State Street
>Hartford, CT 06103-3178
>Phone:  (860) 240-2700
>Fax:  (860) 240-2800
>Email: ben.krowicki@bingham.com
>          sara.simeonidis@bingham.com
>          brian.hole@bingham.com
>
>*His Attorneys*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on February 20, 2007, a copy of the foregoing sur-reply was sent via operation of the court's electronic notification system, or via first class mail, postage pre-paid, to the following counsel of record:

James N. Tallberg, Esq.
Karsten, Dorman & Tallberg, LLC
8 Lowell Road
West Hartford, CT  06119


                                              _____/s/_____
                                                   Brian R. Hole