# EXHIBIT A

# (Part 1)

CTDOCS/1594690.1

LEXSEE 2000 U.S. DIST. LEXIS 19580


Cited
As of: Feb 21, 2007

ASHROFF BAKSH, Plaintiff, -against- JAMES CAPTAIN & CITIBANK, N.A., Defendants.

99-CV-1806 (ILG)

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF NEW YORK

*2000 U.S. Dist. LEXIS 19580*

**December 11, 2000, Decided**

**DISPOSITION:** [*1] Defendants' motion for summary judgment granted as to Title VII claims and defendants' motion to transfer venue in § 1981 action to the Middle District of Florida granted.

**COUNSEL:** For ASHROFF BAKSH, plaintiff: Stephen T. Mitchell, Esq., Law Offices of Stephen T. Mitchell, Esq., New York, NY.

For JAMES CAPTAIN, CITIBANK, N.A., defendants: Bettina B. Plevan, Proskauer, Rose, Goetz, & Kendelsohn, LLP, New York, NY.

**JUDGES:** I. Leo Glasser, United States District Judge.

**OPINION BY:** I. Leo Glasser

**OPINION:**

MEMORANDUM & ORDER

GLASSER, United States District Judge

This Memorandum and Order is designed to supplement and make more explicit the bases of the Court's ruling from the Bench which was not articulated as artfully as it should have been.

The plaintiff filed a charge of discrimination with the New York State Division of Human Rights ("DHR") and the Equal Employment Opportunity Commission ("EEOC") on November 27, 1997. n1 In it he alleges that he was discriminated against because of his age and race when he was terminated on February 11, 1997. The form provided for the filing of a charge of discrimination provides a series of boxes to be checked specifying the causes of discrimination alleged. [*2] Those boxes, in addition to "race" and "age," are designated as "color," "sex," "religion," "national origin," "retaliation," "disability," and "other." The only boxes the plaintiff checked were "race" and "age." In the section of the form requiring a statement of the particulars of the charge, the plaintiff wrote, in substance, that after 27 years of employment with the defendant he was notified on February 11, 1997, that his "job was discontinued" and he was terminated. He went on to write "I believe respondent has discriminated against me based on my age (51 at the time of discharge) and race (Black)." That charge was filed against Citibank, N.A. ("the bank").

   n1 The date on which the plaintiff's signature was subscribed and sworn to stated at the foot of the charge to be "25-11-98" will be regarded as an inadvertence.

More than two years later, in a complaint dated March 30, 1999, the plaintiff commenced an action against the bank and James Captain, his supervisor, alleging violation of *42 U.S.C. § 1981* [*3] and Title VII of the Civil Rights Act of 1964, *42 U.S.C. § 2000e,* et seq. The complaint, though inartfully pleaded and construed broadly, may be read to include allegations of hostile environment, retaliation, failure to promote and national origin, claims that were not specified in the filed charge with the DHR and the EEOC.

Case 3:01-cv-01913-DJS   Document 124-2   Filed 02/20/2007   Page 3 of 7

Page 2
2000 U.S. Dist. LEXIS 19580, *

Thereafter, on September 15, 1999, the defendants moved for an order dismissing the complaint pursuant to *Fed. R. Civ. P. 12(b)(1), 12(b)(3)* and *12(b)(6)* or, in the alternative, for summary judgment pursuant to *Fed. R. Civ. P. 56*; transferring the case to the Middle District of Florida pursuant to *28 U.S.C. § 1406*(a) or *28 U.S.C. § 1404*(a); awarding costs and attorney's fees and for such other relief as the Court may deem just and proper. The plaintiff's papers in opposition were mailed to the defendants approximately one year later, on September 9, 2000 (docket entry # 18). The defendants' papers in reply were submitted on October 17, 2000. In addition, also prepared and submitted were Rule 56.1 statements and memoranda of law in support of and in opposition to the motions.

It is noted [*4] that in defendants' statement of material facts filed as required by Local Rule 56.1, they state that the plaintiff was employed by the bank in 1970 and he was transferred from New York City to Tampa, Florida in 1995, because the operating unit of the bank in which he worked was relocated there; that he worked exclusively in Tampa until February, 1997, when his position was eliminated; that the co-defendant, James Captain, has resided in Tampa since 1995. The first seven paragraphs of the plaintiff's 56.1 statement refer to another case which was before the Court, dismissed and affirmed on appeal and which has no relevance to this case. The remaining paragraphs are devoted to assertions that the bank's Human Resources Department is located in New York City and makes the ultimate decision regarding the termination of employment. It does not controvert the defendants' 56.1 statement that the plaintiff's position was eliminated.

The defendants' motions were aimed at the late filings of the Title VII charge with the EEOC and the DHR; the improper laying of venue in this district; the claims of discrimination in the complaint that go beyond the charges filed with the EEOC and the DHR; [*5] and the validity of the complaint against the individual defendant. The plaintiff's submissions were, as expected, devoted to advancing a different view.

The memoranda of law and other submissions in support of and in opposition to the defendants' motions were considered by the Court in addition to its independent research in anticipation of oral argument to be heard on December 1st, 2000.

Immediately upon the case being called, the plaintiff announced his application to withdraw the Title VII claims against the bank and the individual defendant, leaving only the § 1981 claims. The defendants had no indication that such an application would be made and expressed surprise. n2 The Court had no indication that the application would be made until it was. Having prepared to decide the motions from the bench, it too was surprised. In the course of the argument, the Court characterized the plaintiff's application as "sandbagging." Although that characterization was as it affected the defendants, the Court was "sandbagged" too, in that the legal bases upon which it had carefully determined the motion should be properly decided were radically shifted.

> n2 The transcript of the proceeding reflects the following statements by defendants in this regard.
>
> > As Mr. Mitchell indicted, we just learned of this at 9:45 this morning. This motion, by the way was served in September of 1999, a year and three months ago. This is not anything that has ever been suggested to us by counsel before.

(Tr. at p. 2)

[*6]

Discussion

I. The Plaintiff's Application to Withdraw Claims

The effectiveness of the plaintiff's last minute unnoticed application to withdraw his Title VII claims against the bank and the individual defendant is of singular significance in the disposition of the motions before the Court.

*Rule 41(a), Fed. R. Civ. P.* addresses voluntary dismissals and provides, in relevant part as follows:

> **(a)(1) By Plaintiff; by Stipulation.**
> An action may be dismissed by the plaintiff without order of court (i) by filing a notice of dismissal at any time before service by the adverse party of an answer or of a motion for summary judgment, whichever first occurs, or (ii) by filing a stipulation of dismissal signed by all parties who have appeared in the action . . . .

At the outset, the question arises whether the Rule has application to a dismissal of a claim rather than an action. A literal reading of the Rule led the Court in *Harvey Aluminum, Inc. v. American Cyanamid Co., 203 F.2d 105* (2d Cir.), cert. denied, *345 U.S. 964, 97 L. Ed. 1383, 73 S. Ct. 949 (1953)*, to hold that the word "action" used

in the Rule refers to the entire [*7] controversy in contrast to the word "claim" which traditionally has been understood to mean "cause of action." It is significant to note, however, that that reading of the Rule was in response to the plaintiff's attempt to drop a party to the action which, the Court added implicated *Rule 21, Fed. R. Civ. P.* which provides for the adding or dropping of parties by the Court on motion and "we think that this rule is the one under which an action to eliminate Reynolds as a party should be taken." *Harvey, 203 F.2d at 108.* "The sounder view and the weight of judicial authority is to the contrary." Wright & Miller, Federal Practice and Procedure: Civil 2d § 2362. In *Johnston v. Cartwright, 355 F.2d 32, 39 (8th Cir. 1966),* Judge Blackmun, as he was then, noted that "it may not be material whether the court acts under Rule 15(a) which relates to amendments, or Rule 21 which concerns misjoinder, or Rule 41(a)(2)." Noting, in other contexts, that Harvey has received a "cool reception" *Johnson Chemical Company, Inc. v Home Care Products Inc., 823 F.2d 28, 30 (2d Cir. 1987), Wakefield v. Northern Telecom, Inc., 769 F.2d 109 (2d Cir. 1985),* [*8] may fairly be read to have disavowed Harvey and adopted Judge Blackmun's view as expressed in Johnson. In Wakefield at page 114, n.4 the Court wrote:

> *Harvey Aluminum, Inc. v. American Cyanamid Co., 203 F.2d 105 (2d Cir. 1953)* stated that Rule 41(a) may be invoked only to dismiss an entire action but not to dismiss as to only one of several defendants. That decision has been criticized and is now against the weight of authority. It is not clear that the rule laid down in Harvey Aluminum was necessary to the result in view of the fact that the party sought to be dismissed was an indispensable party and dismissal under Rule 41(a) might have been an abuse of discretion. We need not resolve that issue in this case, however, since it is clear that a district court may permit withdrawal of a claim under Rule 15, subject to the same standard of review as a withdrawal under Rule 41(a). (citations omitted).

See also, Mutual Benefit Life Ins. Co. in *Rehabilitation v. Carol Management Corp., 1994 U.S. Dist. LEXIS 14574, No. 93 Civ. 7991, 1994 WL 570154 (S.D.N.Y. Oct. 13, 1994)* (that aspect of Harvey Aluminum that holds that Rule 41 allows for dismissal [*9] of entire actions, rather than claims has been criticized and rejected by courts and commentators alike, including the Court of Appeals itself (citing Wakefield); *Mondejar v. The Dow Chemical Company, No. 97 Civ. 62, 1998 WL 812577 (E.D.N.Y. April 29, 1998)* (Harvey Aluminum is no longer persuasive authority in restricting Rule 41 to "actions"); *General Foods Corp. v. Jay V. Zimmerman Co., 1990 U.S. Dist. LEXIS 10156, No. 86 Civ. 2697, 1990 WL 115714 (S.D.N.Y. Aug. 7, 1990).*

A motion for summary judgment having been served by the defendant, Rule 41(a)(ii) is applicable and requires the filing of a stipulation of dismissal signed by all parties who have appeared in the action. The requirement that the parties consent to a filed stipulation is to ensure that the plaintiff will not be able to dismiss voluntarily a claim at a late stage of the action without the defendant's consent. 8 *Moore's Federal Practice § 41.34[1] (3rd ed.).* The Rule gives effect to a stipulation of discontinuance only when it is filed and the requirement of filing is not merely a technicality. *Orsini v. Kugel, 9 F.3d 1042 (2d Cir. 1993).* As has been noted, there has been neither a stipulation [*10] that was signed by the parties nor filed and, therefore, the attempted voluntary dismissal failed. n3

> n3 The transcript reflects the following statement by the defendants, in relevant part:
>
> > We certainly didn't brief the facts as they stand now. What we briefed was a case in which there were two defendants, both of whom resided in Florida without question. So, if the Court will permit, we would like to opportunity to look at the law further in this particular situation.
> >
> > With that in mind, I would like to proceed with the argument without any more delay. We are still maintaining this motion.
>
> (Tr. at p. 4)

Rule 41(a)(2) provides that: "Except as provided in paragraph (1), . . . an action shall not be dismissed at the plaintiff's instance save upon order of the Court . . . ."

"The plaintiff's request for a voluntary dismissal under Rule 41(a)(2) should ordinarily be made by a formal motion in writing since a court order is required. The opposing party is entitled to notice of the motion." 8 [*11] *Moore's Federal Practice § 41.40[4][a].* That a

motion must be made plainly is required by Rule 7(b)(1) which provides:

> An application to the court for an order shall be by motion which, unless made during a hearing or trial, shall be made in writing, shall state with particularity the grounds therefor, and shall set forth the relief or order sought. The requirement of writing is fulfilled if the motion is stated in a written notice of the hearing of the motion.

An argument on a motion is not a trial or hearing within the meaning of the exception of Rule 7(b)(1). See, *Shapiro v. Freeman, 38 F.R.D. 308, 309 n. 1 (S.D.N.Y. 1965); Hammond-Knowlton v. Hartford-Connecticut Trust Co., 26 F. Supp. 292 (D. Conn. 1939).* In Hammond, the Court wrote at 293:

> An oral argument on a motion previously made is not, in my opinion, the "hearing" at which the necessity for reducing the motions to writing may be obviated. Motions made at a hearing are obviously such as are incidental to the hearing itself, such as motions to exclude evidence, or for a directed verdict, or for a mistrial, etc. In other words, they are such motions as are recorded [*12] in the minutes of the trial or hearing, and it is for that reason that the motion need not be reduced to writing and notice thereof given.
>
> Any other construction of the rule would lead to chaos in motion procedure. A party, for instance, might make a motion on notice, for the inspection of a document, and at the hearing thereof, and without any notice whatever, include a further motion to punish somebody for contempt of court. Therefore, the court will confine itself to the motions as filed.

Hammond-Knowlton has been consistently and favorably cited. In some, the Court has cited the case as holding that the type of "hearing" at which there is no need for reducing a motion to writing is one in which the proceedings are recorded. See, e.g., *IBM Corp. v. Edelstein, 526 F.2d 37 (2d Cir. 1975); Alger v. Hayes, 452 F.2d 841 (8th Cir. 1972).* That reading of Hammond is questionable since the hearing in that case was recorded. Cf. *Jones v. Uris Sales Corp., 373 F.2d 644, 648 (2d Cir. 1967)* (Friendly, J.) ("Even if we assume that these proceedings, even though stenographically reported, were not within the exception to the requirement [*13] of written motions for those 'made during a hearing or trial.'"). A correct reading of Hammond, it is submitted, is found in *Rauch v. United Instruments, Inc., 405 F. Supp. 435, 437 n.2 (E.D. Pa. 1975),* rev'd on other grounds, *548 F.2d 452 (3d Cir. 1976),* which understands the case to have held "that an oral argument on a motion previously made is not the Rule 7(b) 'hearing' at which the necessity for reducing motions to writing may be obviated." In accord with the view of Hammond regarding the "hearing" contemplated by Rule 7(b)(1) is Wright & Miller, Federal Practice and Procedure: Civil 2d § 1193, viz.: "Motions incidental to or made during a hearing or trial may be made orally; a formal written motion is not required. Examples of motions that often fall within these categories are a motion to exclude or strike evidence, for a mistrial, or for directed verdict." These are motions which typically require no advance notice to the other party and therefore obviate the need for a writing. The better practice, in other cases is to require motions to be filed in writing whenever possible. *Taragan v. Eli Lilly & Co., 267 U.S. App. D.C. 387, 838 F.2d 1337, 1341 (D.C. Cir. 1988);* [*14] *Jones, 373 F.2d at 648.* Accordingly, the Court will confine itself to the motions as filed by the defendants.

II. The Title VII Claims

The defendants have moved for an order dismissing the complaint or, in the alternative, for summary judgment. Statements have been submitted by both sides pursuant to Local Rule 56.1 and consideration of the motion as one for summary judgment is appropriate.

To attempt to review the voluminous treatise, law review and judicial literature on summary judgment would be as foolhardy as it would be superfluous. It will suffice to cite the trilogy of United States Supreme Court decisions in which the governing principles are to be found and after which all else is commentary. Those case are: *Celotex Corp. v. Catrett, 477 U.S. 317, 327, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986); Matsushita Electric Industrial Co., v. Zenith Radio Corp., 475 U.S. 574, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986);* and *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986).*

42 U.S.C. § 2000e-5 requires that a charge of discrimination be filed within [*15] 180 days of the alleged unlawful employment practice. The alleged unlawful employment practice is stated in plaintiff's Charge of Discrimination to have been February 11, 1997, and the charge was filed on November 27, 1997, long after 180 days had elapsed. A claim of discrimination which has not been timely filed with the EEOC is time barred. *Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 71 L.*

*Ed. 2d 234, 102 S. Ct. 1127 (1982); Gomes v. Avco Corp., 964 F.2d 1330 (2d Cir. 1992).*

The statute also provides that when the person aggrieved has "instituted proceedings with a State or local agency with authority to grant . . . relief from such [unlawful employment] practice . . . such charge shall be filed . . . within three hundred days after the alleged unlawful employment practice occurred . . . ." (emphasis added). The plaintiff's claim was filed with the New York State Division of Human Rights simultaneously with his filing with the EEOC 289 days after the alleged unlawful employment practice. That filing would be timely if the State or local agency had authority to grant relief. The case most frequently cited in this regard is *Iwankow v. Mobil Corp., 150 A.D.2d 272, 541 N.Y.S.2d 428* [*16] (1st Dep't, 1989) the facts in which parallel the facts here almost exactly. The plaintiff, a Canadian citizen, was employed by Mobil for 28 years. At the time he was terminated, he was employed in London for 3 1/2 years. He commenced his action alleging a violation of the Human Rights Law which prohibits discrimination in employment on account of age. His asserted jurisdictional nexus with New York, aside from the fact that Mobil was a domestic corporation, was that his termination was incident to a reduction in force which was decided upon at corporate headquarters in New York. The plaintiff here asserts the same jurisdictional nexus. In granting a motion to dismiss the complaint, the Court held that "Absent an allegation that a discriminatory act was committed in New York or that a New York State resident was discriminated against, New York courts have no subject matter jurisdiction over the alleged wrong." *Iwankow, 150 A.D.2d at 274.* As regards the locus of the alleged discrimination, a reading of the complaint points to Tampa, Florida as the place where the discriminatory acts occurred. In paragraph 5 thereof, the plaintiff alleges that "at the time of his discharge [*17] he was working in the Domestic Custody Department of Citibank in Tampa, Florida as an assistant vice-president." In paragraph 8, he alleges, in relevant part, that Mr. Captain "oversaw the unfair and racially based discharge of a disproportionate number of employees of African descent during the time he managed the Tampa, Florida based office of Citibank." In paragraph 9 he alleges, in relevant part that "in general, white employees who transferred to the Tampa facility managed by Mr. Captain were granted higher rates of pay than the persons of African descent that transferred to Tampa." In paragraph 10, he alleges, in relevant part, that "Mr. Captain also encouraged and fostered a racially hostile atmosphere at the Tampa facility." As regards residence, the plaintiff here was, and still is, a resident of New Jersey. Thus the New York court does not have authority to grant the relief he seeks. In accord are: *Duffy v. Drake Beam Morin, 1998 U.S. Dist. LEXIS 7215, No. 96 Civ. 5606, 1998 WL 252063 (S.D.N.Y. May 19, 1998); Thomas v. Texaco, 998 F. Supp. 368 (S.D.N.Y. 1998); Miller v. Citicorp, 1997 U.S. Dist. LEXIS 2395, 95 Civ. 9728, 1997 WL 96569 (S.D.N.Y. March 4, 1997); Sherwood v. Olin Corp., 772 F. Supp. 1418 (1991);* [*18] *Osli-Bousu v. Federal Home Loan Bank of New York, 726 F. Supp. 95 (S.D.N.Y. 1989).* There being no issue of material fact in dispute and for the foregoing reasons, the defendant banks' motion for summary judgment is granted. This determination makes it unnecessary to address the venue provision of *42 U.S.C. 2000e-5(f)(3).*

Summary judgment is also granted to the individual defendant against whom a Title VII claim was also asserted. *Tomka v. Seiler Corp., 66 F.3d 1295, 1313-16 (2d Cir. 1995),* requires that result having decided that Title VII liability may not be imposed upon supervisors and managers.

III. Claims of Hostile Environment, Retaliation and Failure to Promote

As has been noted, the charge of discrimination filed by the plaintiff was based upon his race and age.

It is well settled that a district court has jurisdiction to entertain Title VII claims that are either included in an EEOC charge or are based upon conduct arising after the EEOC charge which is "reasonably related" to the claims alleged in the EEOC charge. *Kirkland v. Buffalo Bd. of Ed., 622 F.2d 1066 (2d Cir. 1980).* This rule obviates [*19] the necessity for repeated filings of EEOC complaints when the subsequent claims are sufficiently similar to those contained in the original charge. *Malarkey v. Texaco, Inc., 983 F.2d 1204, 1208 (2d Cir. 1993); Butts v. City of New York, 990 F.2d 1397, 1401 (2d Cir. 1993); Patel v. Lutheran Med. Ctr., Inc., 753 F. Supp. 1070, 1072 (E.D.N.Y. 1990).* The claims extrinsic to the filed charge did not occur thereafter and are, therefore, not embraced by the rule.

The § 1981 claim although time-barred in New York (where a three year limitation applies) is still viable in Florida where a four year statute of limitation is applicable. Unlike Title VII which has its own venue provision, see *42 U.S.C. § 2000e-5(f)(3)*, § 1981 does not. Venue in that action is then regulated by *28 U.S.C. § 1391*(b) which provides in relevant part:

> A civil action wherein jurisdiction is not found solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same state, (2) a judicial [*20] district in which a substan-

tial part of the events or omissions giving rise to the claims occurred. . . .

The defendant Captain resides in Florida and the long-arm statute of Florida, *Fla. Stat. Ann. § 48.193(1)(a)* (West 1998), confers personal jurisdiction over the bank. The defendants, therefore, reside in the Middle District of Florida. In addition, a substantial part of the events giving rise to the claim occurred there. Venue, therefore, is properly laid in Florida. In the interests of justice, the case is hereby transferred to the Middle District of Florida pursuant to *28 U.S.C. § 1406*(a). This determination thus supplements the order issued from the bench which transferred venue on the ground of forum non conveniens.

In sum, the defendants' motion for summary judgment is granted as to the Title VII claims and the defendants' motion to transfer venue in the § 1981 action to the Middle District of Florida is also granted.

SO ORDERED.

Dated: Brooklyn, New York

December 11th, 2000

I. Leo Glasser