## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

HOWARD JOHN GOMBERT,           :
                               :
            Plaintiff,         :
                               :
      v.                       :      No. 3:01CV01913(DJS)
                               :
LARRY LYNCH and                :
WILLIAM KAMINSKI,              :
                               :
            Defendants.        :

### MEMORANDUM OF DECISION AND ORDER

The Plaintiff, Howard John Gombert ("the Plaintiff") brought this action against the Defendants, Larry Lynch ("Lynch") and William Kaminski ("Kaminski") (collectively, "the Defendants"), pursuant to 42 U.S.C. § 1983, alleging violations of his rights under the Eighth, Fourth, and Fourteenth Amendments to the United States Constitution. On July 2, 2004, the Plaintiff, who was then proceeding pro se, moved for partial summary judgment. The Defendants filed a motion for summary judgment on November 24, 2004. On February 15, 2005, the court issued a decision denying without prejudice the Plaintiff's motion for summary judgment, and granting the Defendants' motion for summary judgment with regard to the Plaintiff's Eighth and Fourteenth Amendment claims. (See dkt. # 72.) In that same decision, the court granted the Plaintiff's request to have counsel appointed to him. (See id.) On April 28, 2006, counsel for the Plaintiff was appointed, and on June 8, 2006, the Plaintiff's attorneys filed their

-1-

appearances in this matter.

On October 3, 2006, the court held a conference with counsel in which the court permitted the Plaintiff and the Defendants to re-file summary judgment motions with regard to the Plaintiff's remaining Fourth Amendment search and seizure claim.  Now pending before the court are the Plaintiff's motion for partial summary judgment (dkt. # 97) and the Defendants' renewed motion for summary judgment (dkt. # 101) pursuant to Rule 59 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.").  For the reasons that hereafter follow, the Plaintiff's motion for summary judgment **(dkt. # 97)** is **GRANTED** and the Defendants' motion for summary judgment **(dkt. # 101)** is **DENIED**.

## I. FACTS

At all times relevant to this case, the Defendants were members of the New Milford, Connecticut Police Department ("NMPD").  On February 29, 2000, the Plaintiff, who was living with his girlfriend, "J," and their minor daughter at 322A Aspetuck Ridge Road in New Milford, was arrested by members of the NMPD, including Kaminski, on charges of sexual assault, risk of injury to a minor, and assault.  Kaminski transported the Plaintiff to the NMPD's headquarters for processing.  The Plaintiff subsequently pled guilty to the charges under the so-called <u>Alford</u> doctrine, whereby a judgment may be entered against

-2-

a defendant who tenders a plea of guilty even when accompanied by a claim of innocence.[1]

On March 1, 2000, the day after the Plaintiff was arrested and while the Plaintiff was in custody, the New Milford police obtained a search warrant and consent from J to search the house at 322A Aspetuck Ridge Road.  The police, including both Defendants, conducted a search of the house, from which a number of items were removed.

During the March 1, 2000 search, the Plaintiff's Pontiac Firebird was lawfully parked on his property.  The Defendants allege that the hood and trunk of the car were open, whereas the Plaintiff claims that only the hood was open.  At no point did the Plaintiff give consent to search his car.  Nevertheless, Lynch removed items (including various bags, boxes, and cases), which he claims were in plain view in the car, and retained them. He did not suspect that the items taken from the Plaintiff's car were connected to any criminal activity.  Instead, the claim is that the items, which were eventually placed within the NMPD's evidence room, were taken for "safe keeping."

On March 8, 2000, a warrant was obtained to search the contents of the items taken from the Plaintiff's car.  Opening those items revealed that items' contents consisted primarily of

---

[1] See North Carolina v. Alford, 400 U.S. 25 (1970).

pornographic videotapes and photographs.  These pornographic materials were released by the NMPD to the Lichfield State's Attorney's Office.  After the Plaintiff obtained two court orders for the release of the property, much of his property that had not been destroyed was returned to him.[2]

## II. DISCUSSION

The Plaintiff has brought this action against the Defendants pursuant to 42 U.S.C. § 1983, alleging that they violated his Fourth Amendment right to be free from unreasonable searches and seizures.  Title 42, Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ."

42 U.S.C. § 1983.  "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'"  Graham v. Connor, 490 U.S. 386, 393-94 (1989) (citing Baker v. McCollan, 443 U.S. 137, 144, n.3 (1979)).  "To prevail on a § 1983 claim, a

---

[2]In their Local Rule 56(a)(1) Statement, the Defendants provide statements of fact describing how the Plaintiff was a suspect in a missing person's case in Carmel, New York.  The court fails to see how this information, even if accepted as true, is relevant to the narrow issue in this case: whether the Defendant's violated the Plaintiff's Fourth Amendment rights when, in executing a search warrant for the Plaintiff's house, they took items from his car.  In the court's view, the facts as set forth above adequately provide the material facts needed to decide this issue.

plaintiff must establish that a person acting under color of state law deprived him of a federal right." Thomas v. Roach, 165 F.3d 137, 142 (2d Cir. 1999).

The Defendants ask the court to grant summary judgment in their favor, arguing that they did not violate the Plaintiff's Fourth Amendment rights, that they are entitled to qualified immunity, and that the conduct alleged did not rise to the level of a constitutional violation.  The Plaintiff asks the court to grant summary judgment in his favor, arguing that, even taking the facts of this case in a light most favorable to the Defendants, he is entitled to judgment as a matter of law.  The court shall analyze the parties' arguments seriatim.

A.  SUMMARY JUDGMENT STANDARD

A motion for summary judgment may be granted, "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56.

Summary judgment is appropriate if, after discovery, the nonmoving party "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  "The burden is on the moving party 'to demonstrate the absence of any material factual issue genuinely in dispute.'"

Am. Int'l Group, Inc. v. London Am. Int'l Corp., 664 F.2d 348, 351 (2d Cir. 1981) (quoting Heyman v. Commerce & Indus. Ins. Co., 524 F.2d 1317, 1319-20 (2d Cir. 1975)).

A dispute concerning a material fact is genuine " 'if evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Aldrich v. Randolph Cent. Sch. Dist., 963 F.2d 520, 523 (2d Cir. 1992) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  The court must view all inferences and ambiguities in a light most favorable to the nonmoving party.  See Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991).  "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." Id.  In addition, when, as is the case here, "both parties move for summary judgment, asserting the absence of any genuine issues of material fact, a court need not enter judgment for either party. . . . Rather, each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration." Morales v. Quintel Entm't, Inc., 249 F.3d 115, 121 (2d Cir. 2001) (internal citation omitted).

## B. PERSONAL INVOLVEMENT

Before the court addresses the substance of the parties Fourth Amendment arguments, it must first address a preliminary issue.  The Defendants make the argument that the Plaintiff

repeatedly lumps Lynch and Kaminski together without demonstrating their individual, personal involvement in the wrongs alleged by the Plaintiff. Specifically, the Defendants argue that Lynch, not Kaminski, "made the decision" to remove the items from the Plaintiff's car.

It is true that the "personal involvement of the defendant in the conduct that allegedly violates the plaintiff's constitutional rights is generally a prerequisite for liability under a § 1983 claim." Snider v. Dylaq, 188 F.3d 51, 54 (2d Cir. 1999). Nevertheless, "[i]t is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." Anderson v. Branen, 17 F.3d 552, 557 (2d Cir. 1994). Thus, "[a]n officer who fails to intercede is liable for the preventable harm caused by the actions of the other officers where that officer observes or has reason to know . . . that any constitutional violation has been committed by a law enforcement official, see O'Neill [v. Krzeminski], 839 F.2d [9,] 11 [(2d Cir. 1988)]." Id. "In order for liability to attach, there must have been a realistic opportunity to intervene to prevent the harm from occurring." Id. "Whether an officer had sufficient time to intercede or was capable of preventing the harm being caused by another officer is an issue of fact for the jury unless, considering all the

evidence, a reasonable jury could not possibly conclude otherwise." Id.

It is undisputed that both Lynch and Kaminski were present during the March 1, 2000 search of the Plaintiff's house, and it is undisputed that Lynch took the items from the Plaintiff's car. The Defendants claim, however, that Kaminski did not participate in that activity. In the court's view, though, if Lynch violated the Plaintiff's constitutional rights by taking those items, Kaminski would also be liable under Anderson. Even assuming that Kaminski did not himself physically remove the items from the Plaintiff's car, there is no question that: (1) he knew about the existence of those items; (2) he knew Lynch had decided to remove the items from the Plaintiff's car; and (3) he was at the scene when Lynch removed the items from the Plaintiff's car, causing him to know about Lynch's actions. (See dkt. # 104, Kaminski Affidavit.) Thus, Kaminski assuredly would have had the opportunity and ability to intervene to prevent the removal of the items. No reasonable jury could find otherwise. As a result, the Defendants' argument regarding their personal involvement are unavailing.

Regarding events occurring after items were taken from the Plaintiff's car, the Defendants arguments regarding their personal involvement are equally unavailing for a different reason: they are immaterial to this discussion. The Defendants

state that Lynch was not present at the Plaintiff's February 29, 2000 arrest, and they discuss at length the Defendants's involvement (or non-involvement) with a necklace that was allegedly taken from the Plaintiff's car and subsequently released to the Carmel, New York police department.  The issue here, though, is one of liability, i.e., whether the Defendants violated the Fourth Amendment through the search and seizure of items in the Plaintiff's car.  Indeed, the Defendants' factual allegations about a necklace, or about police suspicion that the Plaintiff was involved in the disappearance of a woman, even if accepted as true, are not relevant at all to this analysis, and cannot raise a genuine issue of material fact.

C. FOURTH AMENDMENT SEARCH AND SEIZURE

The Fourth Amendment to the United States Constitution reads as follows:  "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."  U.S. Const. amend. IV.  "The Fourth Amendment's search and seizure provisions are applicable to [state] defendants through the Fourteenth Amendment's Due Process Clause."  Tenenbaum v. Williams, 193 F.3d 581, 602 n.14 (2d Cir. 1999) (citing Mapp v. Ohio, 367 U.S. 643,

655 (1961)).

It is well established that "[w]arrantless searches 'are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well delineated exceptions.'" United States v. Howard, 489 F.3d 484, 492 (2d Cir. 2007) (quoting Coolidge v. New Hampshire, 403 U.S. 443, 454-55 (1971)). On March 1, 2000, the Defendants executed a warrant that authorized them to search "a certain cottage style house located on a parcel of land known at 322A Aspetuck Ridge Rd., New Milford, Ct. [sic]"  (Dtk. # 118, Ex. J, Bates No. NMPD 00290.)[3] The warrant executed on March 1, 2000 did not authorize the NMPD to search the Plaintiff's car, but rather limited the search specifically to the Plaintiff's house.  The Defendants themselves do not argue that the March 1, 2000 warrant authorized them to search and seize the Plaintiff's car or its contents.  Therefore, for the search of the Plaintiff's car to not be considered unreasonable under the Fourth Amendment, the Defendants must point to some exception to the warrant requirement.

In their submissions, the Defendants argue that the so-

_____

[3]The validity of this warrant is not at issue here, and, for the purposes of this motion, the court shall assume that the warrant was valid.

called "community caretaking" and inventory exceptions[4] to the warrant requirement allowed them to take the items from the Plaintiff's car for "safekeeping."[5]  One of the means by which property (in most cases, a vehicle)[6] lawfully may come into police possession is "in connection with the police's 'community caretaking function.'"  <u>South Dakota v. Opperman</u>, 428 U.S. 364, 368 (1976) (quoting <u>Cady v. Dombrowski</u>, 413 U.S. 433, 441 (1973)).  "For example, it is 'beyond challenge' that the police may impound a vehicle that is parked illegally or otherwise 'impeding traffic or threatening public safety and convenience.'"  <u>United States v. Barrios</u>, No. 07 Cr. 658(DLC), 2007 WL 3256945, at *2 (S.D.N.Y. Nov. 1, 2007) (quoting <u>Opperman</u>, 428 U.S. at 369).

---

[4]The parties do not make clear distinctions between the concepts of community caretaking and inventory searches.  As the Seventh Circuit has pointed out, the Supreme Court "treats impoundments [through community caretaking] and inventory searches as distinctive processes, which are warranted in different (though frequently overlapping) circumstances." <u>United States v. Duguay</u>, 93 F.3d 346, 352 (7th Cir. 1996).  Therefore, the court shall discuss both principles.

[5]In the court's February 15, 2005 decision, the court found that the plain view exception to the warrant requirement was inapplicable here because at the time the items in the Plaintiff's car were taken, the Defendants did not suspect that any of these items were connected to criminal activity.  (<u>See</u> dkt. # 72.)

[6]Most of the cases the court has found regarding this community caretaking function concern vehicles and their impoundments.  Indeed, although the Second Circuit has not addressed this issue, other circuits have held that "the community caretaking exception to the warrant requirement is applicable only in cases involving automobile[s]."  <u>United States v. Bute</u>, 43 F.3d 531, 535 (10th Cir. 1994); <u>see</u> <u>United States v. Erickson</u>, 991 F.2d 529, 532 (9th Cir. 1993) (restricting the community caretaking exception to searches not involving homes or offices); <u>United States v. Pichany</u>, 687 F.2d 204, 209 (7th Cir. 1982) (declining to extend the community caretaking exception to the warrantless search of a warehouse).

"Alternatively, a car that is legally parked in a public place, such as a street or parking lot, but that will be inaccessible to its owner for an extended period--as a result of an arrest, for example--may also be impounded in order to safeguard the vehicle if such a step is reasonable under the circumstances." Id. (citing United Sates v. Best, 415 F. Supp. 2d 50, 53-57 (D. Conn. 2006) (collecting cases); United States v. Mundy, 806 F. Supp. 373, 376 (E.D.N.Y. 1992)). "The 'community caretaking function' is "totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute," Cady, 413 U.S. at 441, and thus seizures and inventory searches conducted in connection with that function do not offend the Fourth Amendment as long as they are warranted 'either in terms of state law or sound police procedure[,]' id. at 447." Id.

There is also an inventory search exception to the warrant requirement. "When the police impound vehicles or detain suspects, they frequently perform inventory searches." United States v. Mendez, 315 F.3d 132, 137 (2d Cir. 2002) (citing Illinois v. Lafayette, 462 U.S. 640, 648 (1983) (holding admissible evidence recovered during an inventory search of a shoulder bag possessed by a lawfully arrested person); Opperman, 428 U.S. at 376 (holding admissible evidence discovered during the impoundment of an illegally parked automobile)). "Such

searches are constitutional under the Fourth Amendment because they 'serve to protect an owner's property while it is in the custody of the police, to insure against claims of lost, stolen, or vandalized property, and to guard the police from danger.'" Id. (quoting <u>Colorado v. Bertine</u>, 479 U.S. 367, 372 (1987)). "Today, 'the inventory search constitutes a well-defined exception to the warrant requirement.'"  Id. (quoting <u>Lafayette</u>, 462 U.S. at 643).

Nevertheless, "the right to [make an] inventory . . . does not carry in its wake unlimited discretion." Id. (internal quotation marks omitted).  "A valid inventory search routine may allow the searching officers sufficient latitude to determine whether a particular container should or should not be opened, . . . but [t]he individual police officer must not be allowed so much latitude that inventory searches are turned into a purposeful and general means of discovering evidence of crime . . . ." Id.; see <u>Florida v. Wells</u>, 495 U.S. 1, 4 (1990); <u>Bertine</u>, 479 U.S. at 376.

The court finds that the Defendants' arguments fail as a matter of law.  First, in most situations involving vehicles, the "community caretaking" exception applies when the police wish to take that vehicle into their control or custody.  For example, the police may impound a vehicle that is blocking traffic.  The police also may impound a vehicle that is legally parked in a

-13-

public place, but that will be inaccessible to its owner for an
extended period as a result of an arrest in order to safeguard
the vehicle.

Here, however, the Plaintiff's car was not blocking traffic
or inconveniencing the public at large.  In addition, the
Plaintiff's car was lawfully parked on his own property, not in a
public place, and was not implicated in any vehicle regulation
violation.  Therefore, the community caretaking exception would
not have permitted the police to take custody or control of the
Plaintiff's car.  United States v. Squires, 456 F.2d 967, 970 (2d
Cir. 1972) ("However, since the Cadillac was parked in the
parking lot behind the apartment house in which appellant lived,
which was an appropriate place for it to be, and appellant did
not consent to its removal, the officers did not have a
reasonable basis for concluding that it was necessary to take the
Cadillac to the police station in order to protect it."); see
Miranda v. City of Cornelius, 429 F.3d 858, 860 (9th Cir. 2005)
("[T]he impoundment of Plaintiffs' vehicle was an unreasonable
seizure not justified by the community caretaking doctrine
because the police have no duty to protect a vehicle parked on
the owners' property and there was no reason to believe that
impoundment would prevent any threat to public safety from its
unlawful operation . . . ."); United States v. Jacobs, No.
00-20074-01-JWL, 2000 WL 1701723, at *3 (D. Kan. Nov. 7, 2000)

("This court agree[s] with other jurisdictions that police may
not seize a vehicle lawfully parked on a driver's property simply
because the driver is arrested.")

In this case, instead of impounding (or otherwise taking
custody of) the Plaintiff's car, the police took items out of his
car, purportedly pursuant to their community caretaking
responsibilities.  The court can find no law, however, to support
the proposition that, under the banner of "community caretaking,"
the police can search and seize items from a vehicle that was not
itself already under police custody or control via the police's
community caretaking function.  See Jacobs, 2000 WL 1701723, at
*3 ("If a person is [arrested] in or at his place of residence
and his car is parked in the garage or lot or other place where
that person ordinarily leaves his car, then the police cannot
justify [a] seizure . . . on the grounds that such an action is
needed for the protection of the vehicle and its contents.")
(citing Wayne R. LaFave, Search and Seizure § 7.3 (1996)).

Indeed, the Defendants' own citations to relevant "community
caretaking" case law involve situations where the police had
impounded a vehicle. Here, on the other hand, the police searched
the Plaintiff's house for evidence relating to the Plaintiff's
criminal charges, and took items from the Plaintiff's car before

they departed.[7]  As the court discussed above, the community

caretaking function would not have allowed the police to impound

or search the Plaintiff's car, let alone take items from the car,

which was never actually placed under police custody or control.

Thus, the principle of "community caretaking" quite simply did

not permit the police in this case to take the items from the

Plaintiff's car.[8]

_____

[7]For the purposes of this community caretaking analysis, the court is
assuming that the search and seizure of the items from the Plaintiff's car was
"totally divorced from the detection, investigation, or acquisition of
evidence relating to the violation of a criminal statute," Cady, 413 U.S. at
441, despite the fact that Kaminski testified that when he looked in the
Plaintiff's car, he was looking for evidence of a crime (see dkt. # 118, Ex.
B, Kaminski Dep. at 131.)

[8]The Defendants' argument regarding the apparent value of the items
seized is utterly unpersuasive.  This merits of this argument are not material
to the court's decision; the court would like to point out, however, that the
Defendants themselves admit the removed property "may not have been
immediately apparent as valuable."  They go on to say that they were
nevertheless justified in seizing the property because "the officers had no
way of knowing that the items contained in the bags were *not* valuable."  This
argument does not hold water.  The Defendants are, in essence, claiming that
they could take the bags from the Plaintiff's car because they did not know
the contents of the bags.  That is, the Defendants' assert that their
ignorance of the contents of the Plaintiff's bags permitted them, through
their community caretaking function, to conduct a warrantless search and
seizure of those bags, which were located in the Plaintiff's own car, which in
turn was lawfully parked on the Plaintiff's own property.  This is contrary to
the principles of the Fourth Amendment, and the court shall not adopt such a
position.
     In addition, the cases to which the Defendants cite on this point are
inapposite because they did not involve, discuss, or analyze the police's
"community caretaking" function.  Rather, those discussed whether certain
items seized by police during the course of criminal investigations either
fell under a warrant, or were exempted from the warrant requirement for a
special reason, such as officers' safety, or safekeeping of cash, or the
preservation of files seized pursuant to a warrant.  See Dale v. Bartels, 732
F. 2d 278 (2d Cir. 1984); Rivera v. United States, 728 F. Supp. 250 (S.D.N.Y.
1990); Schiff v. Kerrigan, 625 F. Supp. 704 (D. Conn. 1986).  None of these
situations are similar to the situation in this case.  Furthermore, the
seizures conduced in those cases were done pursuant to criminal
investigations, and as the Supreme Court has said, a police claim of a
community caretaking must be "totally divorced" from the detection,
investigation, or acquisition of evidence in a criminal case.  Therefore,
those cases provide no assistance to the Defendants.

With regard to inventory searches, this exception to the warrant requirement, as seen from the case law, applies to situations in which the police seize personal effects: (1) off a person lawfully arrested; or (2) from a vehicle under the control or custody of the police.  Thus, a search of those items (e.g., a shoulder bag) on a person lawfully arrested may fall under this exception.  See Lafayette, 462 U.S. at 648.  Additionally, a search of items found in an impounded car may fall under this exception.  See Opperman, 428 U.S. at 376.

This case, however, involves neither of these situations. It is undisputed that, on March 1, 2000, the Plaintiff had already been arrested and was in police custody.  Items found on his person could then be subject to an inventory search; however, the items in question here were not found on his person. Therefore, the fact that the Plaintiff was arrested and in police custody does not provide a situation in which the inventory exception to the warrant requirement applies.

This leaves the circumstances surrounding the Plaintiff's car.  Again, it is undisputed that the Plaintiff's car was lawfully parked on his property when the items contained therein were taken by the police.  As noted by the Supreme Court and the Second Circuit, inventory searches "serve to protect an owner's property while *it* is in the custody of the police . . . ." Bertine, 479 U.S. at 372 (emphasis added); see Mendez, 315 F.3d

-17-

at 137.  The Supreme Court did not hold that the inventory search
exception applies simply because a person is in police custody.
Rather, the property of that person must be in police custody
because of a lawful arrest or vehicle impoundment.  The
Plaintiff's car was not impounded, and there is no indication
that at any time during or after the Plaintiff's arrested, the
NMPD otherwise had custody of the Plaintiff's car.  As a result,
the court fails to see how the inventory exception applies to
this situation.

In addition, the court notes that the inventory exception
allows the police to search through items in situations where the
policy already have custody over a vehicle (e.g., through
"community caretaking") containing those items.  It does not,
however, provide the police with the distinct authority to
conduct a warrantless seizure of property from a vehicle that is
not already in their control or custody.  It could not, and did
not, provide the Defendants in this case with the authority to
actually take the Plaintiff's property from his car.  This would
be true even if the car doors and trunk were all unlocked and
open, and the seized items were in full view of the police in
broad daylight.[9]

Furthermore, the court points out that, if the inventory

[9]The court reiterates that the "plain view" exception is not at issue
here, and that the Defendants admit there was no suspicion that the items in
the Plaintiff's car were connected to some criminal activity at the time they
were taken.

exception applied in this case, there would have been no need for the NMPD to obtain the March 8, 2000 warrant to search the contents of the items taken from the Plaintiff's car.  As noted above, the inventory exception applies to situations in which the police already have custody of the property in question and need to search it "to insure against claims of lost, stolen, or vandalized property, and to guard the police from danger." Bertine, 479 U.S. at 372.  Therefore, if the NMPD had obtained the items from the Plaintiff's person via his arrest, or from the Plaintiff's vehicle via an impoundment, they could have searched those items without the need for a warrant.[10]

In short, the court finds that the Defendants have failed to demonstrate that the seizure of the items from the Plaintiff's car was conducted properly pursuant to a valid exception to the warrant requirement.  The Defendants claim they knew that the Plaintiff would be incarcerated and that J would not be returning to the house, causing them to worry for the safety of the potentially valuable items in plain view in the Plaintiff's car. It is laudable that the Defendants appear to have had such concern for the safety and security of the Plaintiff's personal

---

[10]Of course, a valid warrant for the Plaintiff's vehicle also would have allowed the items in that vehicle to be searched and seized.

belongings.[11]  Nevertheless, even taking all factual inferences
and ambiguities in a light most favorable to the Defendants, the
court finds that search and seizure of the items from the
Plaintiff's car was, as a matter of law, a violation of the
Plaintiff's Fourth Amendment rights.

### D. QUALIFIED IMMUNITY

"[G]overnment officials performing discretionary functions
generally are granted a qualified immunity and are 'shielded from
liability for civil damages insofar as their conduct does not
violate clearly established statutory or constitutional rights of
which a reasonable person would have known.'" <u>Wilson v. Layne</u>,
526 U.S. 603, 609 (1999) (quoting <u>Harlow v. Fitzgerald</u>, 457 U.S.
800, 818 (1982)).  The Supreme Court established the analysis for
determining whether an officer is entitled to qualified immunity.
<u>See</u> <u>Saucier v. Katz</u>, 533 U.S. 194 (2001).  "A court required to
rule upon the qualified immunity issue must consider, then, this
threshold question:  Taken in the light most favorable to the
party asserting the injury, do the facts alleged show the
officer's conduct violated a constitutional right?"  <u>Id.</u> at 201.

---

[11]The court wonders, though, why the Defendants, in order to secure
items in the Plaintiff's legally parked car, could not have simply secured the
car and its contents by closing and locking all of the car's open doors and
hatches.  After all, upon completing the search of the Plaintiff's house, the
NMPD presumably did not seize every item of potential value therein.  Instead,
the police "ensured that [the house] was secure."  The court also wonders why
the Defendants expressed such concern for the bags, boxes, and cases in the
car, causing those items to be seized, but not for the car itself, which
possibly had a greater value than the pornographic material contained in the
seized bags, boxes, and cases.

"[T]he next, sequential step is to ask whether the right was clearly established." Id. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. at 202.

The court does not believe that the Defendants are entitled to qualified immunity. As discussed above, the court has found that, taken in the light most favorable to the party asserting the injury, the facts show the Defendants' conduct violated the Plaintiff's Fourth Amendment right to be free from unreasonable searches and seizures. The next step is to ask whether this right was clearly established at the time. The law regarding the general necessity of warrants for searches and seizures, "community caretaking," and the inventory exception to the warrant requirement, were all clearly established well before March, 1, 2000. See Coolidge, 403 U.S. at 454-55; Cady, at 441; Opperman, 428 U.S. at 376; Bertine, 479 U.S. at 372.

Still, the court must also ask whether it would have been clear to a reasonable officer that his conduct was unlawful in the situation he confronted. In the court's view, the answer to this question is yes. A reasonable officer would know that, in general, warrantless searches and seizures are per se unreasonable under the Fourth Amendment, absent a few specifically established and well delineated exceptions. In

-21-

fact, the police in this case knew as such, considering that they did obtain a warrant for the Plaintiff's house.  Upon review of the warrant executed on March 1, 2000, a reasonable officer would know that the Plaintiff's car was not covered by that warrant, and the Defendants do not argue that it was.  A reasonable officer would know that, in order to seize any items from the Plaintiff's car, an exception to the warrant requirement must apply.

The Defendants thus proffer the "community caretaking" and inventory exceptions.  A reasonable officer would realize, however, that these could not apply in this case.  The Plaintiff's car was legally parked on his own property.  It was not obstructing traffic or threatening public safety and convenience.  Therefore, a reasonable officer would see no need to exercise his community caretaking powers and seize the car, let alone seize bags, boxes, and cases in that car.  Moreover, a reasonable officer would realize that the inventory exception to the warrant requirement applies to situations in which the police seize personal effects: (1) off a person lawfully arrested; or (2) from a vehicle under the control or custody of the police.  None of these occurred here, and the Defendants offer no other reason for the seizure of the Plaintiff's property.  Thus, a reasonable officer would know that an inventory search of items not properly in police custody is unlawful.  Consequently, the

court finds that the Defendants are not entitled to qualified immunity.

## E. STATE POST-DEPRIVATION REMEDIES

The Defendants also argue that "a negligent or intentional deprivation of property by a state actor does not implicate a Constitutional violation, at least in the Due Process context, if the state provides meaningful post-deprivation remedies." To support this proposition, the Defendants cite to <u>Parratt v. Taylor</u>, 451 U.S. 527 (1981) and <u>Hudson v. Palmer</u>, 468 U.S. 517 (1984), which held that the availability of an adequate post-deprivation remedy under state law negates the contention that the deprivation, whether negligent (<u>Parratt</u>) or intentional (<u>Hudson</u>), is without due process of law.

Neither <u>Parratt</u> nor <u>Hudson</u> is controlling here, however, because they involved alleged violations of Fourteenth Amendment due process rights via deprivations of certain property interests. Indeed, in <u>Parratt</u>, the Court expressly noted that

> The only deprivation respondent alleges in his complaint is that his rights under the Fourteenth Amendment of the Constitution of the United States were violated. That he was deprived of his property and Due Process of Law. As such, respondent's claims differ from the claims which were before us in <u>Monroe v. Pape</u>, <u>supra</u>, which involved violations of the Fourth Amendment, and the claims presented in <u>Estelle v. Gamble</u>, 429 U.S. 97 . . . (1976), which involved alleged violations of the Eighth Amendment. . . . Respondent here refers to no other right, privilege, or immunity secured by the Constitution or federal laws other than the Due Process Clause of the Fourteenth Amendment <u>simpliciter</u>.

Parratt, 451 U.S. at 536.  Thus, the Court in Parratt "indicated
that the availability of a post-deprivation remedy would not
apply to alleged violations of *substantive* constitutional
rights."  Madden v. City of Meriden, 602 F. Supp. 1160, 1164 (D.
Conn. 1985).  Indeed, [t]he Court [in Parratt] carefully limited
its holding and discussion to procedural due process."  Id. at
1165.

     At issue here are the Plaintiff's rights under the Fourth
Amendment, not his procedural due process rights under the
Fourteenth Amendment.  Although the Plaintiff, in his complaint,
did allege violations of his Fourteenth Amendment equal
protection rights, he never alleged that the Defendants violated
his Fourteenth Amendment procedural due process rights.   As a
result, the Defendants' arguments based upon Parratt and Hudson
are inapplicable to this case.

     There are no genuine issues of material fact in this case.
With regard to the March 1, 2000 seizure of the items from the
Plaintiff's car, which is the only incident at issue here, the
parties agree on the relevant facts.  The only fact about which
the parties disagree relates to how many of, or to what extent,
the car doors or hatches were open on March 1, 2000.  This is not
a material fact, though, because, even if the court were to
wholly give the Defendants the benefit of the doubt (i.e., assume
that all the car doors and hatches were wide open), their conduct

would still constitute a Fourth Amendment violation as a matter of law.  As such, the Plaintiff's motion for summary judgment **(dkt. # 97)** is **GRANTED** and the Defendants' motion for summary judgment **(dkt. # 101)** is **DENIED.**

### III. CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment **(dkt. # 97)** is **GRANTED** and the Defendants' motion for summary judgment **(dkt. # 101)** is **DENIED.  Judgment shall enter in favor of the Plaintiff with regard to his Fourth Amendment claim as contained in Claim II of the complaint.**

**SO ORDERED** this <u>27th</u> day of March, 2008.

_____  /s/DJS

**DOMINIC J. SQUATRITO**
**UNITED STATES DISTRICT JUDGE**